(Slip Opinion) OCTOBER TERM, 2009 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HUI ET AL. *v.* CASTANEDA, AS PERSONAL REPRESENTA-TIVE OF THE ESTATE OF CASTANEDA, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 08–1529.  Argued March 2, 2010—Decided May 3, 2010

While detained by immigration authorities, Francisco Castaneda persistently sought treatment for a bleeding, suppurating lesion.  Although a U. S. Public Health Service (PHS) physician's assistant and three outside specialists repeatedly advised that Castaneda urgently needed a biopsy, petitioners—a PHS physician and a commissioned PHS officer—denied the request.  After Castaneda was released from custody, tests confirmed that he had metastatic cancer.  He then filed this suit, raising medical negligence claims against the United States under the Federal Tort Claims Act (FTCA), 28 U. S. C. §§1346, 2671–2680, and constitutional claims against petitioners under *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388, 397.  When Castaneda died, respondents, his representative and heir, were substituted as plaintiffs.  The District Court denied petitioners' motion to dismiss the *Bivens* action, rejecting their claim of absolute immunity under 42 U. S. C. §233(a), which provides: "The [FTCA] remedy *against the United States* provided by [28 U. S. C. §§1346(b) and 2672] for damage for personal injury, including death, resulting from the performance of medical . . . or related functions . . . by any [PHS] commissioned officer or employee . . . while acting within the scope of his office or employment, *shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee*."  (Emphasis added.)  The Ninth Circuit affirmed.

*Held:* The immunity provided by §233(a) precludes *Bivens* actions against individual PHS officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment.  Pp. 5–13.

  (a) The Court's inquiry begins and ends with §233(a)'s text, which

plainly precludes a *Bivens* action against petitioners by limiting re-
covery for harms arising from the conduct at issue to an FTCA action
against the United States. The breadth of §233(a)'s words "exclusive"
and "any" supports this reading, as does the provision's inclusive ref-
erence to all civil proceedings arising out of "the same subject-
matter." Because the phrase "exclusive of any other civil action" is
easily broad enough to accommodate both known and unknown
causes of action, the Court's reading is not undermined by the fact
that §233(a) preceded *Bivens*. The later enacted Westfall Act further
supports this understanding of §233(a). In amending the FTCA to
make its remedy against the United States exclusive for most claims
against Government employees for their official conduct, the Westfall
Act essentially duplicated §233(a)'s exclusivity language, 28 U. S. C.
§ 2679(b)(1), but provided an explicit exception for constitutional vio-
lations, §2679(b)(2). This shows that Congress did not understand
the exclusivity provided by §2679(b)(1)—or the substantially similar
§233(a)—to imply such an exception. Pp. 5–7.

(b) Respondents' arguments to the contrary do not undermine the
Court's conclusion. Pp. 7–12.

(1) Respondents' heavy reliance on *Carlson* v. *Green*, 446 U. S.
14, is misplaced. *Carlson* is inapposite to the issue in this case—
whether petitioners are immune from suit for the alleged violations—
because the *Carlson* petitioners invoked no official immunity. In-
stead, the case considered the separate question whether a remedy
was available under the Eighth Amendment for alleged violations of
the Cruel and Unusual Punishments Clause notwithstanding that a
federal remedy was also available under the FTCA. Pp. 7–8.

(2) Contrary to respondents' contention, §233(a) does not incorpo-
rate a *Bivens* exception through its cross-reference to §1346(b) and
that section's cross-reference to the FTCA, which includes the
Westfall Act exception for constitutional claims, §2679(b)(2)(A). Be-
cause §233(a) refers only to "[t]he *remedy* . . . provided by sections
1346(b) and 2672" (emphasis added), only those portions of the FTCA
that establish its remedy are incorporated by §233(a)'s reference to
§1346. Section 2679(b) is not such a provision. Pp. 8–10.

(3) Respondents' claim that the Westfall Act's *Bivens* exception,
§2679(b)(2)(A), directly preserves a *Bivens* action against PHS offi-
cers and employees is belied by the fact that the provision by its
terms applies only to the specific immunity set forth in "[p]aragraph
(1)." Moreover, if §233(a) forecloses a *Bivens* action against PHS per-
sonnel, respondents' reading of §2679(b)(2)(A) would effect an implied
repeal of the more specific §233(a). Repeals by implication are not
favored and will not be presumed absent a clear and manifest legisla-
tive intent to repeal. *Hawaii* v. *Office of Hawaiian Affairs*, 556 U. S.

\_\_\_, \_\_\_. Nothing suggests that Congress intended §2679(b) to repeal §233(a)'s more comprehensive immunity. P. 10.

(4) Respondents' contention that other features of §233 show that §233(a) does not make the FTCA remedy exclusive of all other actions against PHS personnel is rejected. Neither §233(c) nor §233(f) indicates that an injured party may maintain a *Bivens* action against an individual PHS officer or employee in these circumstances. Pp. 10–12.

546 F. 3d 682, reversed and remanded.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–1529

ESTHER HUI, ET AL., PETITIONERS *v.* YANIRA CASTANEDA, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF FRANCISCO CASTANEDA, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[May 3, 2010]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

This case presents the question whether 42 U. S. C. §233(a), as added, 84 Stat. 1870, precludes an action under *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971), against U. S. Public Health Service (PHS) personnel for constitutional violations arising out of their official duties. When federal employees are sued for damages for harms caused in the course of their employment, the Federal Tort Claims Act (FTCA), 28 U. S. C. §§1346, 2671–2680, generally authorizes substitution of the United States as the defendant. Section 233(a) makes the FTCA remedy against the United States "exclusive of any other civil action or proceeding" for any personal injury caused by a PHS officer or employee performing a medical or related function "while acting within the scope of his office or employment." Based on the plain language of §233(a), we conclude that PHS officers and employees are not personally subject to *Bivens* actions for harms arising out of such conduct.

## I

Francisco Castaneda was detained by U. S. Immigration and Customs Enforcement (ICE) at the San Diego Correctional Facility (SDCF) beginning in March 2006. According to the complaint later filed in the District Court, when Castaneda arrived at SDCF he had on his penis an irregular, raised lesion that measured roughly two centimeters square.[1] Castaneda promptly brought his condition to the attention of medical personnel working for the Division of Immigration Health Services, reporting that the lesion was growing in size and becoming more painful and that it frequently bled and emitted a discharge. Petitioner Dr. Esther Hui, a civilian PHS employee, was the physician responsible for Castaneda's medical care during his detention at SDCF. Petitioner Commander Stephen Gonsalves, a commissioned PHS officer, was a Health Services Administrator at SDCF during the relevant period.

Between March 2006 and January 2007, Castaneda persistently sought treatment for his condition. As his disease progressed, the lesion became increasingly painful and interfered with his urination, defecation, and sleep. In December 2006, Castaneda additionally reported a lump in his groin. A PHS physician's assistant and three outside specialists repeatedly advised that Castaneda needed a biopsy to ascertain whether he had cancer. Petitioners denied requests for a biopsy and other recommended procedures as "elective." App. 244, 249–251. Instead, Castaneda was treated with ibuprofen and antibiotics and was given an additional ration of boxer shorts.

After a fourth specialist recommended a biopsy in January 2007, the procedure was finally authorized. Instead of providing treatment, however, ICE released Castaneda

---

[1] Because this case comes to us on petitioners' motion to dismiss, we assume the truth of respondents' factual allegations. See *Fitzgerald* v. *Barnstable School Comm.*, 555 U. S. ___, ___ (2009) (slip op., at 1).

from custody on February 5. A week later, biopsy results confirmed that Castaneda was suffering from penile cancer. The next day, Castaneda had his penis amputated, and he began chemotherapy after tests confirmed that the cancer had metastasized to his groin. The treatment was unsuccessful, and Castaneda died in February 2008.

Three months before his death, Castaneda filed suit against petitioners in the United States District Court for the Central District of California. As relevant, Castaneda raised medical negligence claims against the United States under the FTCA and *Bivens* claims against petitioners for deliberate indifference to his serious medical needs in violation of his Fifth, Eighth, and Fourteenth Amendment rights.[2]  After Castaneda's death, respondents—Castaneda's sister, Yanira Castaneda, and his daughter, Vanessa Castaneda (by and through her mother, Lucia Pelayo)—amended the complaint to substitute themselves as plaintiffs. Yanira and Vanessa Castaneda are respectively the representative of and heir to Castaneda's estate.

Petitioners moved to dismiss the claims against them, contending that §233(a) gives them absolute immunity from *Bivens* actions by making a suit against the United States under the FTCA the exclusive remedy for harms caused by PHS personnel in the course of their medical or related duties. The District Court denied the motion, concluding that §233(a)'s text and history evidence a congressional intent to preserve *Bivens* actions. *Casta-*

----

[2] In *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388, 397 (1971), this Court recognized an implied cause of action for damages against federal officers alleged to have violated the petitioner's Fourth Amendment rights. We subsequently found such a remedy available for violations of an individual's rights under the Cruel and Unusual Punishments Clause of the Eighth Amendment and the Due Process Clause. See *Carlson* v. *Green*, 446 U. S. 14, 17–19 (1980); *Davis* v. *Passman*, 442 U. S. 228, 230 (1979).

*neda* v. *United States*, 538 F. Supp. 2d 1279, 1288–1295 (2008). Petitioners filed an interlocutory appeal.[3]

The Court of Appeals for the Ninth Circuit affirmed the District Court's judgment that §233(a) does not preclude respondents' *Bivens* claims. *Castaneda* v. *United States*, 546 F. 3d 682 (2008).[4] The court cited *Carlson* v. *Green*, 446 U. S. 14 (1980), for the proposition that a *Bivens* remedy is unavailable only when an alternative remedy is both expressly declared to be a substitute and can be viewed as equally effective, or when special factors militate against direct recovery. Looking to the statute's text and history, the court noted that §233(a) does not mention the Constitution or recovery thereunder and found it significant that §233 was enacted prior to this Court's decision in *Bivens*. Drawing further support for its view from the statute's legislative history and from subsequent congressional enactments, the Court of Appeals concluded that §233(a) does not expressly make the remedy under the FTCA a substitute for relief under *Bivens*.

For essentially the reasons given in *Carlson*, 446 U. S., at 20–23, the Court of Appeals also determined that the FTCA remedy is not equally effective as a *Bivens* remedy. Unlike the remedy under the FTCA, the court reasoned, a *Bivens* remedy is awarded against individual defendants and may include punitive damages. Additionally, *Bivens* cases may be tried before a jury, and liability is governed by uniform federal rules rather than the law of the State

––––––––––––

[3] Although it does not bear directly on the question presented in this case, we note that while petitioners' appeal was pending the Government filed a formal notice admitting liability with respect to respondents' claims for medical negligence under the FTCA. App. 329.

[4] The court concluded that it had jurisdiction over the interlocutory appeal because district court orders denying absolute immunity constitute "final decisions" for purposes of 28 U. S. C. §1291. See 546 F. 3d, at 687 (citing *Mitchell* v. *Forsyth*, 472 U. S. 511, 524–527 (1985)); see also *Osborn* v. *Haley*, 549 U. S. 225, 238–239 (2007).

in which the violation occurred.  After further concluding that no special factors militate against finding a remedy available in these circumstances, the court held that respondents' *Bivens* action could proceed.

As the Ninth Circuit recognized, its holding conflicts with the Second Circuit's decision in *Cuoco* v. *Moritsugu*, 222 F. 3d 99 (2000), which construed §233(a) to foreclose *Bivens* actions against PHS personnel.  We granted certiorari to resolve this conflict.  557 U. S. \_\_\_ (2009).

## II
### A

Our inquiry in this case begins and ends with the text of §233(a).  See *Harris Trust and Sav. Bank* v. *Salomon Smith Barney Inc.*, 530 U. S. 238, 254 (2000).  The statute provides in pertinent part that:

> "[t]he remedy *against the United States* provided by sections 1346(b) and 2672 of title 28 . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, *shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee* (or his estate) whose act or omission gave rise to the claim."  §233(a) (emphasis added).

Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct.  By its terms, §233(a) limits recovery for such conduct to suits against the United States.  The breadth of the words "exclusive" and "any" supports this reading, as

does the provision's inclusive reference to all civil proceedings arising out of "the same subject-matter." We have previously cited §233(a) to support the contention that "Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy." *Carlson*, 446 U. S., at 20. The meaning of §233(a) has become no less explicit since we last made that observation.

Our reading of §233(a)'s text is not undermined by the fact that the provision preceded our decision in *Bivens*. Contrary to the view of the Court of Appeals, that a *Bivens* remedy had not yet been recognized when §233(a) was enacted does not support the conclusion that Congress, in making the remedy provided by the FTCA "exclusive of any other civil action," did not mean what it said. Language that broad easily accommodates both known and unknown causes of action.

The later enacted Federal Employees Liability Reform and Tort Compensation Act of 1988 (Westfall Act), 102 Stat. 4563, further supports this understanding of §233(a). The Westfall Act amended the FTCA to make its remedy against the United States the exclusive remedy for most claims against Government employees arising out of their official conduct.[5] In providing this official immunity, Congress used essentially the same language as it did in §233(a), stating that the remedy against the United States is "exclusive of any other civil action or proceeding," §2679(b)(1). Notably, Congress also provided an exception for constitutional violations. Pursuant to §2679(b)(2), the immunity granted by §2679(b)(1) "does not extend or apply to a civil action against an employee of the Government

---

[5] Prior to the Westfall Act amendments, the FTCA authorized substitution of the United States as a defendant in suits against federal employees for harms arising out of conduct undertaken in the scope of their employment, see 28 U. S. C. §1346(b) (1982 ed.), but it made that remedy "exclusive" only for harms resulting from a federal employee's operation of a motor vehicle, §2679(b).

. . . brought for a violation of the Constitution of the United States." §2679(b)(2)(A). The Westfall Act's explicit exception for *Bivens* claims is powerful evidence that Congress did not understand the exclusivity provided by §2679(b)(1)—or the substantially similar §233(a)—to imply such an exception. Given Congress' awareness of pre-existing immunity provisions like §233 when it enacted the Westfall Act, see *United States* v. *Smith*, 499 U. S. 160, 173 (1991), it is telling that Congress declined to enact a similar exception to the immunity provided by §233(a).

B

In advocating a contrary reading of §233(a), respondents rely heavily on our opinion in *Carlson*, as did the Court of Appeals. *Carlson*, however, is inapposite to the issue in this case. There are two separate inquiries involved in determining whether a *Bivens* action may proceed against a federal agent: whether the agent is amenable to suit, and whether a damages remedy is available for a particular constitutional violation absent authorization by Congress. See *United States* v. *Stanley*, 483 U. S. 669, 684 (1987) ("[T]he availability of a damages action under the Constitution for particular *injuries* . . . is a question logically distinct from immunity to such an action on the part of particular *defendants*"). Even in circumstances in which a *Bivens* remedy is generally available, an action under *Bivens* will be defeated if the defendant is immune from suit. See, *e.g.,* 403 U. S., at 397–398 (remanding for determination of respondents' immunity after implying a cause of action under the Fourth Amendment).

Because petitioners in *Carlson* invoked no official immunity, the Court did not address that question. Instead, it considered whether a remedy was available under the Eighth Amendment for alleged violations of the Cruel and Unusual Punishments Clause notwithstanding that a

federal remedy was also available under the FTCA. 446
U. S., at 16–17. Many of our subsequent *Bivens* decisions
likewise addressed only the existence of an implied cause
of action for an alleged constitutional violation. See, *e.g.,*
*Wilkie* v. *Robbins*, 551 U. S. 537, 549 (2007) (declining "to
devise a new *Bivens* damages action for retaliating against
the exercise of ownership rights"); *Bush* v. *Lucas*, 462
U. S. 367, 368 (1983) (declining to "authorize a new non-
statutory damages remedy for federal employees whose
First Amendment rights are violated by their superiors").

This case presents the separate question whether peti-
tioners are immune from suit for the alleged violations.
To determine a defendant's amenability to suit, we con-
sider whether he or she may claim the benefits of official
immunity for the alleged misconduct. Because petitioners
invoke only the immunity provided by §233(a), the ques-
tion in this case is answered solely by reference to whether
that provision gives petitioners the immunity they claim.[6]

As noted, the text of §233(a) plainly indicates that it
precludes a *Bivens* action against petitioners for the harm
alleged in this case. Respondents offer three arguments in
support of their claim that it does not. None persuades us
that §233(a) means something other than what it says.

Respondents first contend that §233(a) incorporates the
entirety of the FTCA, as amended by the Westfall Act,
through its reference to §1346(b).[7] Section 1346(b) in turn
refers to "the provisions of chapter 171," which constitute

––––––––––

[6] We express no opinion as to whether a *Bivens* remedy is otherwise
available in these circumstances, as the question is not presented in
this case.

[7] Section 1346(b) provides in pertinent part that, "[s]ubject to the
provisions of chapter 171 of [Title 28], the district courts . . . shall have
exclusive jurisdiction of civil actions on claims against the United
States, for money damages . . . for injury or loss of property, or personal
injury or death caused by the negligent or wrongful act or omission of
any employee of the Government while acting within the scope of his
office or employment."

the FTCA, including the Westfall Act's exception for claims "brought for a violation of the Constitution of the United States," §2679(b)(2)(A). Through this series of cross-references, respondents would read that exception for *Bivens* actions into §233(a).

Section 233(a) is not susceptible of this reading. As petitioners observe, that provision refers only to "[t]he *remedy* against the United States provided by sections 1346(b) and 2672." §233(a) (emphasis added). Thus, only those portions of chapter 171 that establish the FTCA remedy are incorporated by §233(a)'s reference to §1346. Section 2679(b) is not such a provision. Section 233(a)'s reference to §2672[8]—which is codified in chapter 171—also belies respondents' theory. If §233(a)'s reference to §1346(b) served to incorporate all the provisions of chapter 171, the separate reference to §2672 would be superfluous.

Respondents next argue that the Westfall Act's *Bivens* exception, §2679(b)(2)(A), directly preserves a *Bivens* action against PHS officers and employees. That §2679(b)(2)(A) by its terms applies only to the specific immunity set forth in "[p]aragraph (1)" belies respondents' claim. Moreover, if §233(a) forecloses a *Bivens* action against PHS personnel, respondents' reading of §2679(b)(2)(A) would effect an implied repeal of that more specific provision. Although we noted in *Smith* that §2679(b) applies to all federal employees, see 499 U. S., at 173, we had no occasion to consider whether the *Bivens*

—————————

[8] Section 2672 authorizes agency heads and their designees to "consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

exception in §2679(b)(2)(A) impliedly repealed pre-existing immunity provisions to the extent of any inconsistency. "As we have emphasized, repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Hawaii* v. *Office of Hawaiian Affairs*, 556 U. S. ___, ___–___ (2009) (slip op., at 10–11) (internal quotation marks and alteration omitted). Respondents have pointed to nothing in §2679(b)'s text or drafting history that suggests that Congress intended to repeal the more comprehensive immunity provided by §233(a).

Finally, respondents contend that other features of §233 show that subsection (a) does not make the remedy under the FTCA exclusive of all other actions against PHS personnel. Respondents first note §233's lack of a procedure for "scope certification" in federal-court actions. Under the FTCA, "certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose" transforms an action against an individual federal employee into one against the United States. §2679(d)(1). Because §233 does not provide a similar mechanism for scope certification in federal-court actions,[9] respondents contend that PHS defendants seeking to invoke the immunity provided by §233(a) must rely on the FTCA's scope certification procedure, set forth in §2679(d). Section 2679(d), respondents note, is in turn subject to the "limitations and exceptions" applicable to actions under the FTCA—including the exception for *Bivens* actions provided by §2679(b)(2). See §2679(d)(4).

—————

[9] Section 233(c) includes such a provision for state-court actions, authorizing removal to federal court "[u]pon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose," but unlike §2679(d) it does not prescribe a particular mechanism for substituting the United States in federal-court actions.

We agree with petitioners that there is no reason to think that scope certification by the Attorney General is a prerequisite to immunity under §233(a). To be sure, that immunity is contingent upon the alleged misconduct having occurred in the course of the PHS defendant's duties, but a defendant may make that proof pursuant to the ordinary rules of evidence and procedure. As petitioners observe, proof of scope is in most §233(a) cases established by a declaration affirming that the defendant was a PHS official during the relevant time period. See Reply Brief for Petitioner Hui 6–7, and n. 1. Thus, while scope certification may provide a convenient mechanism for establishing that the alleged misconduct occurred within the scope of the employee's duties, the procedure authorized by §2679(d) is not necessary to effect substitution of the United States. Finally, that the FTCA's scope certification procedure was enacted almost two decades after §233(a) confirms that Congress did not intend to make that procedure the exclusive means for PHS personnel to invoke the official immunity provided by §233(a).

Respondents' argument based on §233(f) is similarly unavailing. That subsection authorizes the Secretary of Health and Human Services to "hold harmless or provide liability insurance" for a PHS officer or employee for personal injuries caused by conduct occurring "within the scope of his office or employment . . . if such employee is assigned to a foreign country . . . and if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 2679(b)." Noting that the FTCA precludes recovery against the United States for "[a]ny claim arising in a foreign country," §2680(k), respondents urge that §233(f)'s authorization of insurance or indemnification in those circumstances anticipates that an injured party without a

remedy under the FTCA may sue a PHS official directly.[10] Accordingly, respondents contend, §233(a) cannot be read to make the remedy under the FTCA truly exclusive. Even if that reading of §233(f) were correct, it would not benefit respondents because an FTCA remedy is unquestionably available for the misconduct alleged in this case.

For the foregoing reasons, respondents' arguments do not undermine our conclusion that the immunity provided by §233(a) precludes *Bivens* actions against individual PHS officers or employees for harms arising out of conduct described in that section.

* * *

In construing §233(a) in petitioners' favor, we are mindful of the confines of our judicial role. Respondents' *amici* caution that providing special immunity for PHS personnel is contrary to the public interest.[11] Respondents likewise contend that allowing *Bivens* claims against PHS personnel is necessary to ensure an adequate standard of care in federal detention facilities, and they further urge that permitting such actions would not endanger PHS' institutional interests as it would simply place PHS personnel in the same position as other federal employees who perform similar functions. See Brief for Respondents 52–55, 60–61. We are required, however, to read the statute according to its text. Because §233(a) plainly

——————

[10] As respondents note, the Westfall Act substantially limited the effect of §233(f). See Brief for Respondents 32 (citing *United States* v. *Smith*, 499 U. S. 160, 166–167 (1991)). But because the Act does not weaken any inference about the meaning of §233(a) that might be drawn from §233(f), the changes effected by the Act are not relevant to the instant inquiry.

[11] See Brief for American Civil Liberties Union as *Amicus Curiae* 25–28; Brief for National Experts on Health Services for Detained Persons as *Amici Curiae* 17–24; Brief for National Immigrant Justice Center as *Amicus Curiae* 20–21; Brief for Rep. John Conyers, Jr., et al. as *Amici Curiae* 25–31.

precludes a *Bivens* action against petitioners for the harms alleged in this case, we reverse the judgment of the Ninth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*