**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3254
_____

ROY ALLEN GREEN,
                                        Appellant

v.

WARDEN BLEDSOE; ASSOCIATE WARDEN HUDSON; ASSOCIATE WARDEN
MAJORANA; CAPTAIN TRATE; LT. HEPNER; LT. SCAMPONI; LT. EDINLER;
BROWN, Health Services Admin; DR. PIGOS; PIEORIA, Physicians Assistant;
RN DELEON

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 11-cv-00481)
District Judge:  Honorable John E. Jones III

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 12, 2013

Before:  SMITH, CHAGARES and SHWARTZ, Circuit Judges

(Opinion filed:  August 8, 2013)

_____

OPINION
_____

PER CURIAM

Roy Allen Green appeals from an order of the United States District Court for the

Middle District of Pennsylvania, which granted the Defendants' motion to dismiss/motion for

summary judgment in Green's civil rights action. We will affirm the District Court's judgment.

In March 2011, Green filed a complaint concerning his treatment when at the United States Penitentiary, Lewisburg. After an incident in late October 2009 when alleged members of the Aryan Brotherhood assaulted correctional officers, Green (a suspected member of the Aryan Brotherhood) and certain other inmates were subjected to "double-cuffing" whenever they were moved. Green, who describes himself as a "large individual," alleged that the cuffs used at Lewisburg were too small for his wrists and had to be forced on, resulting in cuts, open wounds, numbness, pins and needles, loss of dexterity, and permanent nerve damage. Green alleged that "big boy" cuffs were available but the defendants refused to use them, despite his complaints. Green stated that he was moved within the prison four times a day and that the use of the too-small cuffs for a full calendar year constituted "torture." After a year, prison officials compromised and allowed Green to be cuffed in one small pair of handcuffs and one larger pair, which Green found "not as bad," although he alleged that it still caused "pain, swelling, numbness, [and] occasional bruising."[1]

The assigned Magistrate Judge construed the complaint as raising claims that the tight cuffing violated the Eighth Amendment, both through deliberate indifference to Green's medical needs, and through use of excessive force. The Magistrate Judge recommended

---

[1] Green apparently had been moved to a new facility by the time he filed his complaint. It is not clear when the move took place.

granting the Defendants' motion for summary judgment.[2] As to the medical claim, the Magistrate Judge noted that Green had "received on-going medical treatment for his wrist injuries," including "examinations, treatment with ointment and bandages, use of warm compresses, and consultation and examination by outside medical experts." The Magistrate Judge also noted that "medical staff [had] determined that removal of the double handcuffs was not medically necessary." Report and Recommendation ("R&R") at 33. The Magistrate Judge characterized the claims as mere disagreement as to the proper course of treatment. The Magistrate Judge further determined, citing Hui v. Castaneda, 130 S. Ct. 1845 (2010), that one defendant, DeLeon, was a Lieutenant Commander in the Public Health Service, and was thus immune from liability.

The Magistrate Judge determined that the supervisory prison officials were not liable for excessive force based on their decision to order special restraints, as "Green's past conduct and history amply justified this use of force; the force applied was modest, given the grave dangers inherent in Green's penchant for assaultive conduct; the risk to staff and others posed by Green was great . . .; and Green's ability to nearly kill another prisoner while held under these restraints[3] demonstrated that it would have been extremely dangerous to further temper these security measures." R&R at 37-38. The Magistrate Judge also remarked that Green could not

---

[2] Defendants had filed a document characterized as a "Motion to Dismiss, or in the Alternative, for Summary Judgment." The Magistrate Judge determined that the motion gave Green notice that it might be considered as a motion for summary judgment. The Magistrate Judge noted that Green also submitted numerous documents in connection with his response to the Defendants' motion, so he would not be prejudiced if the Court construed the motion as one for summary judgment.

[3] In fact, as the District Court recognized in its Memorandum accompanying the order adopting the Magistrate Judge's Report, Green was not restrained at the time of the referenced incident; he had been released from the cuffs for recreation.

"premise a constitutional claim on the failure of prison supervisors to act favorably upon his complaints," because "inmates like Green have no constitutional right to a grievance procedure in prison." R&R at 38 & 39. The Magistrate Judge further concluded that correctional officers were entitled to qualified immunity because their use of force was "objectively reasonable under the circumstances." R&R at 40-41. The District Court adopted the Magistrate Judge's recommendation over Green's objections, and Green timely appealed.

We have jurisdiction under 28 U.S.C. § 1291. To the extent the District Court determined whether evidence supporting a summary judgment motion (or a motion in opposition thereto) was competent, we review that decision for an abuse of discretion. Schubert v. Nissan Motor Corp. in U.S.A., 148 F.3d 25, 29-30 (1st Cir. 1998). After reviewing the underlying evidentiary decisions, we review the District Court's order granting summary judgment de novo, considering the facts in the light most favorable to the nonmoving party. Id.; Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011). A grant of summary judgment will be affirmed if our review reveals that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Green first argues that the Magistrate Judge improperly considered a videotape submitted by the Defendants, which apparently[4] recorded an incident in May 2010 during which Green repeatedly stabbed another inmate. Green argued that the videotape was irrelevant, as the double-cuffing policy was not instituted because of the incident; in fact, the

---

[4] Green was not apprised of the contents of the video; it was submitted for in camera inspection by the Magistrate Judge.

policy had been in place for several months before the incident. While this is true, the video confirmed the need to continue double-cuffing when transporting Green, and thus was relevant in determining whether the prison's security measures constituted excessive force.

Green also argues that the District Court erred by rejecting as hearsay the declarations of fellow prisoners that he submitted in support of his response to the summary judgment motion. However, it appears that the Magistrate Judge and District Court Judge considered all the evidence that Green submitted.[5] R&R at 40; Dist. Ct. Op. at 3, n.2. Having determined that the District Court properly considered the videotape, and having determined that the District Court considered the declarations of Green's fellow prisoners, we now consider whether summary judgment was warranted as to Green's claims.

The "'core judicial inquiry'" in cases involving excessive force is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." Brooks v. Kyler,

5

204 F.3d 102, 106 (3d Cir. 2000) (citing Whitley v. Albers, 475 U.S. 312, 321 (1986) (internal quotations omitted)).

While Green disputes the prison's purported reasons for instituting double-cuffing,[5] he concedes that double-cuffing was permissible. Green also does not directly dispute the finding that he posed a threat to the safety of inmates and prison staff. Although it is not clear whether Green suffered any permanent injury from the double-cuffing, he indisputably suffered minor, temporary injuries. Although the District Court did not explicitly discuss the two remaining factors relating to the amount of force used, given Green's propensity for violence, we cannot say that the amount of force used was grossly disproportionate to the need for the use of force. Green argues that "big boy" cuffs could have been used to temper the severity of the force. While this factor may weigh in his favor, considering the totality of the Whitley factors, we hold that the District Court properly granted summary judgment on the excessive force claims.

As to the claim that certain of the defendants were deliberately indifferent to Green's medical needs, we agree with the District Court that summary judgment was appropriate. Even assuming, without deciding, that Green demonstrated a "serious" medical need, Green cannot show that the medical defendants were deliberately indifferent to his need, as we agree with the District Court that the "abrasions and contusions suffered by [Green] on his wrists have been

---

[5] Green disputes the prison's contention that he is a member of the Aryan Brotherhood, and he disputes the factual basis for the Magistrate Judge's statement that Green "repeatedly stockpiled weapons, stole handcuff keys, assaulted fellow prisoners and indulged in lethal violence." Appellant's Brief at 4, 17, 21.

routinely and conscientiously treated by prison's medical staff."[6]  Dist. Ct. Op. at 5.

For the foregoing reasons, we will affirm the District Court judgment.

---

[6] Thus, we need not reach Green's allegation that the District Court improperly found that defendant DeLeon was immune from <u>Bivens</u> liability because the allegation of the DeLeon's employment in the Public Health Service was supported only by an unverified assertion.