GEORGE B. DANIELS, United States District Judge:
Plaintiff Rafael Rivera, pro se , brings this action against Defendants Federal Bureau of Prisons (the "BOP"), Tunesia Mitchell, and John Doe Medical Personnel 1-15 (the "John Doe Defendants") asserting claims stemming from medical treatment that he received while detained at the Metropolitan Correctional Center (the "MCC"). (See Am. Compl.) The action was referred to Magistrate Judge Debra C. Freeman for general pretrial management and reports and recommendations on dispositive motions. (See ECF No. 7.) The BOP and Mitchell move to dismiss Plaintiff's amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to Rule 12(b)(6).[1] (ECF No. 36.) Before this Court is Magistrate Judge Freeman's December 14, 2018 Report and Recommendation, (the "Report"), recommending that this Court grant the BOP and Mitchell's motion to dismiss for failure to state a claim as to Plaintiff's Bivens claims, Rehabilitation Act claim, and FTCA claim concerning his receipt of inadequate medical treatment for his facial injury. (Report at 34-35.) Magistrate Judge Freeman finds that Plaintiff has stated viable FTCA claims concerning: (1) placement on a methadone detoxification program; (2) improper prescription of Clonidine ; (3) receipt of another inmate's medication; and (4) Mitchell's order that Plaintiff stand despite a risk that he would fall. However, Magistrate Judge Freeman recommends that this Court dismiss the viable FTCA claims as to Mitchell and substitute the United States for the BOP, because the United States is the only proper defendant on such claims. (Id. at 35.)
In her Report, Magistrate Judge Freeman informed the parties that failure to file timely objections to the Report would *744 constitute a waiver of those objections on appeal. (Id. at 36.) The Objectors filed timely objections. (See Objs., ECF No. 47.) The objections are OVERRULED.
The BOP and Mitchell's motion to dismiss is GRANTED as to Plaintiff's Bivens claims and Rehabilitation Act claim against the BOP and Mitchell, all of Plaintiff's FTCA claims against Mitchell, and Plaintiff's FTCA claim against the BOP concerning Plaintiff's receipt of inadequate medical treatment for his facial injury. The motion to dismiss is DENIED as to Plaintiff's FTCA claims against the BOP concerning: (1) placement on a methadone detoxification program; (2) improper prescription of Clonidine ; (3) receipt of another inmate's medication; and (4) Mitchell's order that Plaintiff stand despite a risk that he would fall. The United States is substituted for the BOP as the proper defendant on Plaintiff's surviving FTCA claims.
I. LEGAL STANDARDS
A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review de novo the portions of a magistrate judge's report to which a party properly objects. Id. Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. See Edwards v. Fischer , 414 F.Supp.2d 342, 346-47 (S.D.N.Y. 2006) (citation omitted). The clear error standard also applies when a party's "objections are improper-because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.' " Stone v. Comm'r of Soc.Sec ., No. 17 Civ. 569 (RJS) (KNF), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (quoting Rodriguez v. Colvin , No. 12 Civ. 3931 (RJS) (RLE), 2014 WL 5038410, at *3 (S.D.N.Y. Sept. 29, 2014) ). Clear error is present when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow , 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).
II. DEFENDANTS' MOTION TO DISMISS
Magistrate Judge Freeman construes Plaintiff's amended complaint to raise claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics , 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. , and the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701 et seq. (Report at 5-6 & n.2).
A. Plaintiff's Bivens Claims
Magistrate Judge Freeman correctly found that Plaintiff's Bivens claims against the BOP and against Mitchell in her official capacity should be dismissed. "Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are ... barred under the doctrine of sovereign immunity, unless such immunity is waived."[2] (Report at 10 *745 (quoting Robinson v. Overseas Military Sales Corp. , 21 F.3d 502, 510 (2d Cir. 1994) ).)
Magistrate Judge Freeman further correctly found that Plaintiff's Bivens claim against Mitchell in her individual capacity should be dismissed.[3] The Public Health Services Act ("PHSA"), 42 U.S.C. § 201 et seq. ,"grants absolute immunity to [Public Health Services ('PHS') ] officers and employees for action arising out of the performance of medical or related functions within the scope of their employment[.]" Hui v. Castaneda , 559 U.S. 799, 806, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010) (citing id. § 233(a) ); (see also Report at 12 (citing same) ). As explained in the Report, Mitchell is immune from suit under the PHSA because Mitchell was a PHS employee at the time of the relevant events and Plaintiff's claims arise from Mitchell's alleged performance of functions related to the provision of medical services. (Report at 13 (citation omitted).)
B. Plaintiff's FTCA Claims
As the Report explains, FTCA claims may only be asserted against the United States, not against federal agencies or individual federal employees. (Report at 20 (citations omitted) ); see also 28 U.S.C. § 2679.) Thus, Magistrate Judge Freeman appropriately recommends that this Court should substitute United States for the BOP as the defendant on Plaintiff's FTCA claims and dismiss those claims as to Mitchell. (Report at 20.)
Magistrate Judge Freeman construes the amended complaint to allege FTCA claims concerning: (1) Plaintiff's placement on a detoxification program; (2) Plaintiff's receipt of improperly prescribed medication; (3) Plaintiff's receipt of another inmate's medication; (4) Mitchell's order that Plaintiff stand despite his known risk of falling; and (5) Plaintiff's receipt of inadequate medical treatment for his facial injury. (See id. at 20-30.)
1. Detoxification Program
Magistrate Judge Freeman construes the amended complaint to allege a medical malpractice claim based on Plaintiff's "placement by BOP medical personnel on a detoxication program that... deviated from acceptable medical practice." (Report at 23.) The Objectors argue that the amended complaint does not "suggest that [Plaintiff] is asserting a claim based on his withdrawal symptoms independent of [his] fall." (Objs. at 8.) However, Plaintiff's amended complaint draws a clear factual distinction between Plaintiff's withdrawal symptoms and the symptoms he experienced after taking medication that allegedly caused his fall. (See Am. Compl. ¶ 11 (noting that Plaintiff's withdrawal symptoms "consisted of nausea and vomiting, cold sweats, inability to sleep, generalized *746 pain, and weakness" but not "dizziness or lightheadedness"); id. ¶ 22 (noting that prior to taking the medication, Plaintiff "was still experiencing symptoms of withdrawal," but "was able to stand and was not dizzy" and "not sleepy").)
The Objectors' contention that Plaintiff's amended complaint does not suggest "that he is seeking damages for [his withdrawal] symptoms" is also without merit. (Objs. at 8.) Plaintiff alleges that "Warden Maureen P. Baird sent [Plaintiff] a letter asking [him] if [he] wanted methadone" for his withdrawal symptoms and that Plaintiff "requested $ 20,000 in money damages" instead. (Am. Compl. ¶¶ 43-44.) It is reasonable to infer from these allegations that Plaintiff is seeking damages for his withdrawal symptoms separate from those he is seeking for the injuries caused by his fall.
The Objectors also argue that Plaintiff's claim based on the detoxification program should be dismissed because he failed to exhaust his administrative remedies. (Objs. at 9.) The Objectors contend that BOP only has records of a single administrative tort claim filed with the Northeast Regional office, and that the claim does not mention the detoxification program. (Objs. at 9 (citing Decl. of Joy Aassiddaa dated Mar. 1, 2019, Ex. 1, ECF No. 47-2, at 1).) However, Plaintiff alleges that he "fill[ed] out numerous forms with the counselor's office including among others the BP-8 ... and the BP-10" in addition to "BP-9's filed at MCC and [the BOP's] Northeast [R]egional [office]." (Am. Compl. ¶ 42.) For purposes of this motion, these allegations must be taken as true. Moreover, Plaintiff also alleges that "Warden Maureen P. Baird sent [Plaintiff] a letter asking [Plaintiff] if [he] wanted methadone." (Am. Compl. ¶ 43.) While it is unclear what prompted Baird's letter, it is reasonable to infer that the letter was in response to some type of administrative complaint from Plaintiff regarding the detoxification program. Thus, the Objectors' contention that Plaintiff failed to exhaust his administrative remedies does not provide a basis to dismiss Plaintiff's claim.
The Objectors further argue that even if the amended complaint is read to state a claim based on the detoxification program and Plaintiff has satisfied the exhaustion requirement, Plaintiff has failed to state a plausible claim for relief. (Objs. at 10.) The Objectors contend that Plaintiff's allegation that the "decision [to place him on the detoxification program] and ensuing treatment was [sic] made pursuant to established procedures, policy, and practice of the [BOP]" is "directly contradict[ed]" by his allegation that his methadone dosage was decreased more rapidly than BOP guidelines provided. (Id. (citing Am. Compl. ¶¶ 8-9) ) But even if this Court disregards Plaintiff's allegations as to whether his treatment was in accordance with BOP policy, Plaintiff states a claim for medical malpractice.[4] Plaintiff alleges that the detoxification program "deviated from the treatment schedule that medical personnel at Albert Einstein had deemed appropriate" prior to his arrest, and that the treatment he received at Albert Einstein was "pursuant to appropriate medical practices." (Am. Compl. ¶ 4.) Plaintiff also alleges that this deviation from accepted medical practice caused him *747 injury in the form of the withdrawal symptoms described above. (See id. ¶ 11.)
2. Improperly Prescribed Medication
Magistrate Judge Freeman construes the amended complaint to assert a claim that Dr. Bussanich, an MCC employee, committed medical malpractice by prescribing Clonidine to Plaintiff. (Report at 26.) The Objectors argue that the amended complaint should not be read to assert such a claim because "the taking of Clonidine is not one of the three alternative reasons Plaintiff offers for his fall." (Objs. at 11 (citing Am. Compl. ¶ 41).) However, the paragraph of the amended complaint that the Objectors cite concerns Plaintiff's allegation that he was "given medication belonging to another inmate." (Am. Compl. ¶ 41.) As discussed above, Plaintiff also alleges, in the alternative, that he was given Clonidine that Dr. Bussanich prescribed for him without his knowledge. (See id. ¶ 17.) Plaintiff further alleges that "[d]izziness is a known side effect of Clonidine," and that he "felt extremely dizzy and lightheaded" when he awoke from a nap after Mitchell gave him a medication he did not recognize. (Id. ¶¶ 18, 24, 28.) Plaintiff also alleges that he "never experienced dizziness while taking Buspirone by itself" and "did not experience dizziness or lightheadedness again while incarcerated." (Id. ¶¶ 37-38.) These allegations support an inference that Mitchell gave Plaintiff Clonidine, which caused Plaintiff to experience the dizziness and lightheadedness that resulted in his fall.
The Objectors argue that even if Plaintiff alleges that Clonidine caused his fall, Plaintiff does not allege that Dr. Bussanich committed malpractice, because "the mere fact that a medication has side effects does not render its prescription malpractice."[5] (Objs. at 12 (citation omitted).) However, Plaintiff does not allege that prescribing Clonidine was malpractice solely because of its side effect of dizziness, but also because "Buspirone is known to have a risk of interaction with Clonidine." (Am. Compl. ¶ 19.) The Objectors note that "Plaintiff does not specify what symptoms the interaction of Buspirone and Clonidine may have" and assert that Plaintiff does not "plausibly allege that any such symptoms caused his fall." (Objs. at 12.) However, as explained in the Report, Plaintiff's allegations support an inference that Buspirone interacted with Clonidine to cause or worsen the dizziness and lightheadedness that resulted in his fall.[6] (See Report at 26-27.)
*748 The Objectors also contend that even if Dr. Bussanich's prescription of Clonidine was malpractice, "Plaintiff fails to plausibly allege that it was foreseeable that prescribing Plaintiff Clonidine... would cause him to fall and sustain a laceration near his eye." (Objs. at 13.) However, the facts in the amended complaint support an inference that the Objectors knew or should have known that prescribing Clonidine in combination with Buspirone risked causing Plaintiff to become dizzy or lightheaded, and it is reasonably foreseeable that a person experiencing such symptoms could fall and become injured. Plaintiff therefore plausibly alleges that the prescription of Clonidine was medical malpractice that proximately caused his injuries.
3. Receipt of Another Inmate's Medication
As discussed in the Report, Plaintiff appears to be uncertain as to whether the new medication he was given was Clonidine. (Report at 3 & n.1, 27.) Accordingly, Magistrate Judge Freeman construes the amended complaint to allege, in the alternative, that Plaintiff was negligently given another inmate's medication.[7] (Id. at 27.) The Objectors argue that Plaintiff fails to state a negligence claim because he "alleges no basis for concluding that he was erroneously given another inmate's medication, or that the other inmate's medication would have caused him to fall." (Objs. at 13-14.) This aspect of the Report need only be reviewed for clear error, because the Objectors made these arguments to Magistrate Judge Freeman. (See Report at 27-28.) But even on de novo review, Defendants' arguments are without merit.
Plaintiff alleges that, contrary to BOP policy, Mitchell gave him a medication without asking for his name or identification number. (Am. Compl. ¶¶ 20-21.) Plaintiff also alleges that he did not recognize the medication, and that Mitchell did not inform him what the name of the medication was or what it was intended to treat. (Id. ¶ 20.) These allegations support an inference that Mitchell negligently gave Plaintiff another inmate's medication. Plaintiff also alleges that the medication made him drowsy and he fell asleep approximately fifteen minutes later. (Id. ¶ 23.) Plaintiff further alleges that, upon awakening, he felt "extremely dizzy and lightheaded," and when he tried to stand, he fell forward and struck his face against a sink. (Id. ¶¶ 24, 28.) Thus, the amended complaint plausibly alleges Mitchell breached her duty of care to Plaintiff by giving him another inmate's medication and that Plaintiff sustained injuries as a result of the breach.[8]
*749 4. Mitchell's Order That Plaintiff Stand Despite a Risk of Falling
Magistrate Judge Freeman construes the amended complaint to allege a claim that Mitchell acted negligently by ordering Plaintiff to stand, ignoring his statements that he felt dizzy and lightheaded and that standing would be dangerous for him. (Report at 29.) Defendants contend that Plaintiff's allegation that "[his] medical records indicat[ed] that he was dizzy" is contracted by his allegations that his withdrawal symptoms did not include dizziness and that the statement in his medical records indicating that he had reported dizziness was wrong. (Objs. at 14 (citing Am. Compl. ¶¶ 11, 24-26).) However, Plaintiff alleges that his dizziness was a result of the medication he received, not withdrawal. (See Am. Compl. ¶¶ 22-24.) The Objectors also argue that Plaintiff "alleges no facts to suggest... Buspirone and Clonidine... would make it difficult to stand." (Objs. at 14.) But, as explained above, Plaintiff alleges that "[d]izziness is a known side effect of Clonidine" and that "Buspirone is known to have a risk of interaction with Clonidine." (Am. Compl. ¶¶ 18-19.) Moreover, even if this Court disregards Plaintiff's allegations regarding his medical records and the side effects of the medications, Plaintiff also alleges that he "told Mitchell that [he] did not think he could stand up" and "told her [his] symptoms to indicate that standing was dangerous for him." (Id. ¶ 24.) Thus, Plaintiff alleges that Mitchell was aware of a risk that standing without assistance could cause Plaintiff injury.
5. Receipt of Inadequate Medical Treatment
Magistrate Judge Freeman correctly found that Plaintiff fails to state a claim for medical malpractice arising out of the medical treatment he received for the facial injury he sustained from his fall. (Report at 30.) As the Report states, Plaintiff pleads no allegations that would support an inference that the treatment he received was below the applicable standard of care. (Id. )
C. Plaintiff's Rehabilitation Act Claim
Magistrate Judge Freeman correctly found that Plaintiff's Rehabilitation Act claim fails. (Report at 32-34.) As discussed in the Report, "the Rehabilitation Act 'prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question.' " (Report at 33 (quoting United States v. Univ. Hosp. , 729 F.2d 144, 156 (2d Cir. 1984) ).) Here, Plaintiff claims that his disability is his drug addiction, which is directly related to the services-i.e., adequate methadone treatment-that he claims that he was denied.[9] (Id. )
III. CONCLUSION
The BOP and Mitchell's motion to dismiss is GRANTED as to Plaintiff's Bivens *750 claims and Rehabilitation Act claim against the BOP and Mitchell, all of Plaintiff's FTCA claims against Mitchell, and Plaintiff's FTCA claim against the BOP concerning Plaintiff's receipt of inadequate medical treatment for his facial injury. The motion to dismiss is DENIED as to Plaintiff's FTCA claims against the BOP concerning: (1) placement on a methadone detoxification program; (2) improper prescription of Clonidine ; (3) receipt of another inmate's medication; and (4) Mitchell's order that Plaintiff stand despite a risk that he would fall. The United States is substituted for the BOP as the proper defendant on Plaintiff's surviving FTCA claims.
SO ORDERED.

Although the memorandum of law filed in support of the motion states that it is submitted on behalf of "Defendants the United States of America, Tunesia Mitchell, and the Bureau of Prisons," (Mem. in Supp. of Defs.' Mot. to Dismiss ("Mem."), ECF No. 37, at 1), the United States is not named as a defendant in the amended complaint. (See Am. Compl., ECF No. 33.) Nonetheless, because Magistrate Judge Freeman recommends that this Court substitute the United States for the BOP as the proper defendant on Plaintiff's viable FTCA claims, this Court will consider the United States, BOP, and Mitchell's (collectively, the "Objectors") objections to the viability of those claims. (See Objs. at 6-15.)

Magistrate Judge Freeman also recommends that this Court dismiss sua sponte Plaintiff's Bivens claims against the John Doe Defendants in their official capacities on grounds of sovereign immunity, and in their individual capacities under the Supreme Court's reasoning in Ziglar v. Abbasi , --- U.S. ----, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017), which explains that "expanding the Bivens remedy is now a 'disfavored' judicial activity." (Report at 15 (quoting Abbasi , 137 S.Ct. 1843, 1857 (2017) ); see also id. at 10, 13-19.) However, as noted in the Report, the John Doe Defendants have not been identified or appeared in this action. (Id. at 13.) This Court declines to dismiss Plaintiff's claims against the John Doe Defendants sua sponte at this time, and therefore does not adopt that portion of the Report's recommendation.

This Court granted the Benjamin N. Cardozo School of Law Civil Rights Clinic and others leave to file an amicus brief objecting to the portion of the Report recommending dismissal of Plaintiff's Bivens claims against the John Doe Defendants. (See Br. for Amicus Curiae in Supp. of PL, ECF No. 48-1.) The amici contend that Abbasi does not support the dismissal of those claims, because Plaintiff does not seek to extend Bivens to a new context and no special factors or alternative remedies exist that would counsel against a Bivens remedy. (Id. at 2-3.) Because this Court declines to dismiss sua sponte Plaintiff's claims against the John Doe Defendants, it will not address the arguments made in the amici 's objections. The Government's request for leave to file a brief in opposition to those objections, (ECF No. 52), is therefore denied without prejudice.

As noted in the Report, Plaintiff's claims are governed by New York law because he was in custody in New York at the time of the alleged events. (Report at 20.) To state a medical malpractice claim, a plaintiff must allege "(1) a deviation or departure from accepted medical practice and (2) evidence that such departure was a proximate cause of injury.' " Ongley v. St. Luke's Roosevelt Hosp. Ctr. , 725 F. App'x 44, 46 (2d Cir. 2018) (quoting DiMitri v. Monsouri , 302 A.D.2d 420, 754 N.Y.S.2d 674, 675 (2d Dep't 2003) ).

The Objectors also contend that Plaintiff cannot bring a separate claim for lack of informed consent. (Objs. at 12.) But Magistrate Judge Freeman does not construe the amended complaint to state such a claim. Rather, Magistrate Judge Freeman notes that Plaintiff's allegation that Dr. Bussanich prescribed him Clonidine without his knowledge or consent could support his medical malpractice claim. (See Report at 27.)

In a footnote to his allegation that Buspirone is known to have a risk of interaction with Clonidine, Plaintiff cites the website Drugs.com, which contains information that further supports such an inference. (Am. Compl. ¶ 19 n.2.) While the URL Plaintiff provides does not lead to a functioning webpage, the Drugs.com website does have a webpage entitled "Clonidine Drug Interactions," which is the title of the webpage in Plaintiff's citation. That webpage contains a link to a description of interactions between Clonidine and Buspirone, which states that "CloNIDine and busPIRone [sic] may have additive effects in lowering ... blood pressure" and that individuals taking both drugs "may experience headache, dizziness, lightheadedness, fainting and/or changes in pulse or heart rate." Interactions Between Your Drugs: Clonidine< > Buspirone, Drugs.com, https://www.drugs.com/drug-interactions/buspirone-with-clonidine-441-0-704-0.html (last visited March 4, 2019).

The Objectors contend that all of Plaintiff's FTCA claims should be construed as medical malpractice claims, rather than negligence claims, because they "pertain to the provision of medical treatment." (Objs. at 6.) Since the Objectors made an identical argument before Magistrate Judge Freeman, this objection need only be reviewed for clear error. (See Mem. in Supp. of Defs.' Mot. to Dismiss ("Mem."), ECF No. 37, at 10.) Magistrate Judge Freeman correctly found that "no rigid analytical line separates general negligence and malpractice claims," (Report at 21 (citing Scott v. Uljanov , 74 N.Y.2d 673, 543 N.Y.S.2d 369, 541 N.E.2d 398, 399 (1989) ), and that a prisoner's "claim that a physician's assistant provided him the wrong medication" may be analyzed as a standard negligence claim. (Id. (citing Mendoza v. Schult , No. 09 Civ. 466 (LEK) (RFT), 2011 WL 4592381, at *6 (N.D.N.Y. Sept. 14, 2011).)

Under New York law, "the elements of a negligence claim are: (i) a duty owed to the plaintiff; (ii) breach of that duty; and (iii) injury substantially caused by that breach." Lombard v. Booz-Allen Hamilton, Inc. , 280 F.3d 209, 215 (2d Cir. 2002) (citation omitted). As explained in the Report, the BOP has a statutory duty to "provide for the safekeeping, care, and subsistence of all inmates and detainees in its custody." (Report at 22 (quoting 18 U.S.C. § 4042(a)(2).)

Plaintiff also fails to allege that he was "otherwise qualified" to receive the benefit (i.e., methadone treatment) that he was denied. (Report at 34.) As the Report notes, "the 'otherwise qualified' language is simply inapplicable to the present context." (Id. (quoting Cushing v. Moore , 970 F.2d 1103, 1108 (2d Cir. 1992) ). Nor does Plaintiff allege that he was denied any "reasonable accommodation," because he does not identify any services, programs, or activities unrelated to his addiction that he was deprived of as a result of the failure to accommodate his disability. (Report at 34.)