SUTTON, Circuit Judge,
dissenting.
Today’s case asks whether a prisoner has an implied right of action to obtain money damages for an Eighth Amendment violation under Bivens v. Six Unknown Federal Narcotics Agents, 408 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), even when an exclusive workers’ compensation statute covers those same injuries. The court says yes; I respectfully say no. The Supreme Court’s consistent skepticism of implied rights of action of this sort, exemplified by its rejection of every such claim since 1980, together with the' exclusive nature of this workers’ compensation regime, leaves no room for this claim.
I.
Courts ask two questions in this context: Does an implied right of action under Bivens exist? If so, are the defendants nevertheless “immune from suit”? Hui v. Castaneda, 559 U.S. 799, 807, 180 S.Ct. 1845, 176 L.Ed.2d 703 (2010). I would hold that no implied right of action exists in the workers’ compensation context, and that even.if it did these defendants remain immune from suit.
A.
This issue straddles two judicial eras— one that embraced implied rights of action and one that does not. In the first era, the Court did not hesitate to infer a private right of action to vindicate a statutory violation, whether the statute provided a cause of action or not. See, e.g., J.I. Case Co. v. Borak, 377 U.S. 426, 433-34, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). It did the same for federal constitutional violations in Bivens. After Bivens, a Fourth Amendment case, the Court inferred a.right of action for some Fifth Amendment violations, see Davis v. Passman, 442 U.S. 228, 248-49, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and some Eighth Amendment violations, see Carlson v. Green, 446 U.S. 14, 18-23, 100 S.Ct. 1468, 64 L,Ed.2d 15 (1980).
But the Court has grown wary of implied rights of action over the last three decades. That has been true of statutory cases. See Alexander v. Sandoval, 532 U.S. 275, 287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); see also Stoneridge Inv. Partners, LLC v. Sci-Atlanta, Inc., 552 U.S. 148, 164-65, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008); Gonzaga Univ. v. Doe, 536 U.S. 273, 287, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). And that has been especially true of constitutional cases. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 67 n. 3, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). Since 1980, the Court has rejected everyeffort— “more than a dozen” by one count, Vance v. Rumsfeld, 701 F.3d 193, 198 (7th Cir. 2012) (en banc) — “to extend Bivens liability to any new context or new category of defendants.” Malesko, 534 U.S. at 68, 122 *262 S.Ct. 515. As that track record suggests, the Court sees implied constitutional rights of action as “unjustified” in “most instances.” Wilkie v. Robbins, 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007).
In both eras, the Court looked to the same two considerations. A Bivens action may not proceed if (1) “any alternative, existing process for protecting the interest [of the plaintiff]” exists or (2) “special factors counsel[]” against applying Bivens. Id. (quotation omitted); see Carlson, 446 U.S. at 18-19, 100 S.Ct. 1468. What changed was a “presumption in favor of a Bivens-like remedy,” which has “long since been abrogated.” Vance, 701 F.3d at 198. Under the former regime, the Court denied a Bivens remedy only if the “defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective.” Carlson, 446 U.S. at 18-19, 100 S.Ct. 1468. Ever since Carlson in 1980, any requirement that Congress “explicitly” declare that other avenues of relief are an “equally effective” “substitute” for a Bivens action has disappeared. See, e.g., Minneci v. Pollard, — U.S. -, 132 S.Ct. 617, 621-23, 181 L.Ed.2d 606 (2012). Instead of an inquiry that makes it difficult to deny a private right of action (and presumes the existence of one), the current inquiry makes it difficult to find a private right of action (and presumes the absence of one). The new inquiry is not the same as the old one, as the case outcomes from the last thirty-six years demonstrate.
All of this explains why the pre-1981 outcomes tug in one direction, and the posN1980 outcomes pull in the other. Under the Court’s current test, the one that governs today, we are left to answer these questions: Is there “any alternative, existing process” for protecting the plaintiffs interests? And are there any “special factors” that counsel against applying Bivens? Wilkie, 551 U.S. at 550, 127 S.Ct. 2588 (quotation omitted). In answering the first question, we do not require, as the Court once seemed to require, that Congress explicitly state that any alternative remedy amounts to an equally effective substitute. That is what I take the Sixth Circuit cases to be doing, see Left Fork Mining Co. v. Hooker, 775 F.3d 768, 774 (6th Cir.2014), including all of the unpublished ones that reject a private right of action in this precise area, see Springer v. United States, 229 F.3d 1154 (6th Cir.2000); Walls v. Holland, 198 F.3d 248 (6th Cir.1999); Fraley v. Dep’t of Justice, 113 F.3d 1234 (6th Cir.1997); cf. Schoor v. Thornburgh, 983 F.2d 1068 (6th Cir.1992).
Alternative avenue of relief. The first question, then, is whether alternative forms of relief exist. When Congress has paid “careful attention” to the plaintiffs injury by creating a process that provides “an avenue for some redress” of the alleged injury, the courts will not infer a Bivens action. Malesko, 534 U.S. at 69, 122 S.Ct. 515; Schweiker v. Chilicky, 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). In these instances, “bedrock principles of separation of powers” show that “Congress expected the Judiciary to stay its Bivens hand” and instead apply the statutory remedy. Malesko, 534 U.S. at 69, 122 S.Ct. 515; Wilkie, 551 U.S. at 554, 127 S.Ct. 2588.
If ever there were a pertinent alternative form of relief, it would be the Inmate Accident Compensation Act, which creates a workers’ compensation system for federal inmates. The Act compensates “inmates or their dependents for injuries suffered ... in any work activity in connection with the maintenance or operation of the institution in which the inmates are *263 confined.” 18 U.S.C. § 4126(c)(4). It pays for actual injuries and for lost-time wages. 28 C.F.R. § 301.101. It awards money regardless of whether inmates prove that the prison officials were at fault. And it casts a wide net, covering every injury “proximately caused” by a work assignment, id. § 301.102(a), and all injuries resulting from the “improper medical treatment of a work-related injury,” id. § 301.301(b).
The Act also establishes an “extensive and comprehensive review process,” which is “precisely the kind of remedial structure that precludes a judicially-created remedy.” Left Fork, 775 F.3d at 775. After the federal employer makes its initial compensation determination (using “all [of the] available evidence,” 28 C.F.R. § 301.305), the inmate has the right to an in-person appeal before a committee, id. § 301.306(b). In the appeal, the inmate may submit additional evidence, call witnesses, cross-examine the government’s witnesses, and be represented by counsel. Id.; see id. §§ 301.309-.310. If the inmate remains dissatisfied with the outcome, he may appeal to the corporation’s Chief Operating Officer. Id. § 301.313. And if all else fails, he may seek review in federal court. See 5 U.S.C. §§ 701-706.
In the words of the Supreme Court, the “comprehensive” system established by the Act creates an “exclusive” and “adequate substitute for a system of recovery by common-law torts.” United States v. Demko, 385 U.S. 149, 152-53, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). If those words sound pertinent to the question at hand, that is because Demko involved a case materially identical to this one. At stake in Demko was whether the Act’s remedies were exclusive and thus precluded a separate lawsuit under the Federal Tort Claims Act. The Court held that the Act’s remedies for work-related injuries were exclusive, regardless of whether a claimant might obtain more or even better relief under the Federal Tort Claims Act. Just so here.
That’s not the only suggestion — in truth directive — the Court gives us. From the Court’s mouth to our ears, the “analysis” in the Federal Tort Claims Act of an alternative enforcement regime “guides [the] analysis” in the Bivens context. Chappell v. Wallace, 462 U.S. 296, 299, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). What precludes negligence actions against the government thus should preclude Bivens actions against individual officials. See United States v. Stanley, 483 U.S. 669, 681, 683-84, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). Because Demko establishes that the Act precludes claims under the Federal Tort Claims Act, the Act precludes claims under Bivens. Else, this workers’ compensation statute would pre-elude an express congressional cause of action but not a judicially implied one. That’s precisely what Wallace and Stanley prevent. Just as the Act excludes claims under the Federal Tort Claims Act (a regime designed to compensate for common law torts), it excludes Bivens actions (a regime designed to compensate for constitutional torts).
That’s all one needs to know to resolve this case. The rest is gravy.
But gravy there is. In addition to the remedies supplied by the Act, the Bureau of Prisons’ remedial mechanisms and the option of an injunction action gave Ko-prowski a way to halt unconstitutional (or other wrongful) prison-official conduct. Malesko, 534 U.S. at 74, 122 S.Ct. 515; see Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); 28 C.F.R. § 542.10(a). These alternatives, according to the Supreme Court, allow inmates to stop “allegedly unconstitutional actions and policies” and to bring those ongoing *264 ones “to the attention of the [Bureau].” Malesko, 534 U.S. at 74, 122 S.Ct. 515. Nor are these options theoretical. Ko-prowski used them to help obtain an MRI in this case.
Taken together, these alternatives allow an injured inmate to receive money for the injury and order the officials to obey the Constitution, demonstrating that Congress paid “careful attention” to this precise injury. Schweiker, 487 U.S. at 423, 108 S.Ct. 2460. They also offer injured inmates extensive review procedures, which further “safeguard[ ]” their rights. Id. at 425,108'S.Ct. 2460.
Special factors. That brings me to the second inquiry: whether “special factors” counsel against implying a constitutional right of action. Even if the Act’s regime and the Bureau’s administrative mechanisms somehow do not constitute alternative remedies, “special factors” counsel against applying Bivens. This inquiry “relate[s] not to the merits of the particular remedy, but to the question of who should decide whether such a remedy should be provided.” Sanchez-Espinoza v. Reagan, 770 F.2d 202, 208 (D.C.Cir.1985) (Scalia, J.) (quotation omitted). In addressing this consideration, courts “weight ] reasons for and against the creation of a new cause of action, the way common law judges have always done.” Wilkie, 551 U.S. at 554,127 S.Ct. 2588. In the workers’ compensation context — involving “a host of considerations that must be weighed and appraised,” Bush v. Lucas, 462 U.S. 367, 380, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (quotation omitted) — Congress is better suited than the courts to craft and manage the remedies for an inmate’s work-related injuries.
Congress weighed the competing policy concerns, and it chose to establish a quid pro quo system as an exclusive substitute for tort relief. It substituted no-fault recovery in exchange for no private rights of action, Bivens included. Especially in this prison workers’ compensation statute, where Congress accounted for “the special need of [this] class of prisoners” and the “differing circumstances of prisoners and nonprisoners,” Demko, 385 U.S. at 152-53, 87 S.Ct. 382, we should respect Congress’s decision. Even if inadequate in Koprow-ski’s eyes (or for that matter judicial eyes), the federally prescribed remedial system indicates that Congress made a judgment about the type of relief it wants inmates injured on the job to recover. It’s relief under the workers’ compensation regime and the Bureau’s remedial mechanisms, not relief under Bivens.
B.
Koprowski’s Bivens claim fails for a related but independent reason. “[C]ommon law or statutory immunities” may, and indeed frequently do, “bar[ ]” Bivens actions. Al-Zahrani v. Rodriguez, 669 F.3d 315, 319 (D.C.Cir.2012).
Hui v. Castaneda, 559 U.S. 799, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010), shows why. Some federal Public Health Service officials allegedly violated a plaintiffs Eighth Amendment rights, as here, while he was in federal custody, as here. Id. at 802-03, 130 S.Ct. 1845. To defend against the plaintiffs Bivens/Carlson claim, the federal officials argued that a statute that made the remedy against the United States exclusive precluded the Bivens claim. See 42 U.S.C. § 233(a). The Court agreed. It did not address whether an implied cause of action under Bivens/Carl-son existed for that type of Eighth Amendment violation. Hui, 559 U.S. at 807-08 & n. 6, 130 S.Ct. 1845. It instead held that, even if one existed, the exclusivity provision in the statute immunized the federal officials from any potential Bivens cause of action. Id. at 805-08,130 S.Ct. 1845.
*265 There’s no escaping Hui’s lesson or its application to Koprowski. A statute that provides an exclusive remedy against some entity other than the federal officials immunizes them from Bivens liability, even when a constitutional implied right of action otherwise exists. And the Inmate Accident Compensation Act provides just that kind of remedy. The Supreme Court already has explained that the Act is “the exclusive remedy to protect ... injured federal prisoners” for work-related injuries. Demko, 385 U.S. at 152, 87 S.Ct. 382. The Act’s regulations, no surprise, say the same thing. They describe the Act as the “exclusive remedy in the case of [an inmate’s] work-related injury.” 28 C.F.R. § 301.319. And exclusivity is of course a critical feature — perhaps the defining feature — of all workers’ compensation systems. The point is to create a trade-off, where inmates get guaranteed (no-fault) coverage, and the government gets freedom from further liability. The Act thus immunizes the prison officials from lawsuits relating to the same work-related injuries no less than the Act in Hui. See Hui, 559 U.S. at.805-06, 130 S.Ct. 1845.
Other workers’ compensation regimes, and the principles that undergird them, confirm this conclusion. When workers’ compensation statutes are “exclusive,” as they usually are, that means they grant “immunity” from lawsuits relating to work-related injuries. See, e.g., WMATA v. Johnson, 467 U.S. 925, 932-33, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984). They need not use the word “immunity” to have an immunizing effect. When exclusive, they “grant [] immunity” from “tort actions that might yield damages many times higher than awards payable under workers’ compensation schedules.” Id. at 932, 104 S.Ct. 2827; Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 655, 126 S.Ct. 2105, 165 L.Ed.2d 110 (2006); see Hui, 559 U.S. at 805-06, 130 S.Ct. 1845.
Nothing in this workers’ compensation statute makes any exceptions for Bivens actions. Some statutes, by contrast, do just that, say by carving out actions “brought for a violation of the Constitution of the United States.” E.g., 28 U.S.C. § 2679(b)(2)(A). But this one doesn’t do anything of the sort. “[Wjithout specific legislation to that effect,” we shouldn’t create “exceptions to [the] system” ourselves. Johansen v. United States, 343 U.S. 427, 441, 72 S.Ct. 849, 96 L.Ed. 1051 (1952); see Demko, 385 U.S. at 151, 87 S.Ct. 382. The “general rule [of] exclusivity” thus applies, id., providing an independent ground for rejecting this Bivens claim.
II.
Koprowski’s arguments on the other side of the ledger come up short.
Carlson v. Green? He puts considerable weight on the Court’s 1980 Carlson decision — more, it turns out, than it can bear. Carlson held that an inmate’s estate could bring a Bivens action against prison officials under the Eighth Amendment. 446 U.S. at 16 & n. 1, 19, 100 S.Ct. 1468. But it did not address whether an “exclusive” statute provided the defendants with immunity, making it “inapposite” to cases like this one. Hui, 559 U.S. at 807-08,130 S.Ct. 1845. Nor did it establish a categorical rule that Bivens applies to all Eighth Amendment claims, e.g., Minneci, 132 S.Ct. at 623 (rejecting Bivens claim for an Eighth Amendment violation), or have anything to do with the special context of the prison workers’ compensation system, meaning it is not dispositive of this case. Cf. Meshal v. Higgenbotham, 804 F.3d 417, 423 (D.C.Cir.2015).
Carlson, it’s true, contains what might seem like helpful dictum. An implied right of action, Carlson said, “may be defeated” *266 by an express statute only when the “defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective.” 446 U.S. at 18-19, 100 S.Ct. 1468. But both parties to this cáse agree that this dictum no longer orients the inquiry because the Court no longer considers it relevant. Since 1980, no Supreme Court majority opinion has relied on it. Now the Court looks only for some alternative system — congressional or not, explicit or not, equally effective or not — that protects the plaintiffs interests. See, e.g., Minneci, 132 S.Ct. at 623. That is precisely what this workers’ compensation regime does.
For what it’s worth, this Bivens claim couldn’t succeed even with the Carlson dictum. Carlson held that the Federal Tort Claims Act did not substitute for Bivens relief, because Congress “made [] crystal clear that [it] views FTCA and Bivens as parallel, complementary causes of action.” 446 U.S. at 20, 100 S.Ct. 1468. Just the opposite is true here. Instead of saying that the Inmate Accident Compensation Act serves as a “parallel, complementary” regime to Bivens, id., Congress treated the Act as “the exclusive remedy to protect” inmates injured on the job and as a “substitute for a system of [tort] recovery,” Demko, 385 U.S. at 152-53, 87 S.Ct. 382; see also 28 C.F.R. § 301.319. Different congressional objectives lead to different results.
Anomalies? But this approach, Koprow-ski counters, creates “disparities” between inmates injured off the job (who can recover under Bivens, see Carlson) and those injured on it (who can’t recover under Bivens and are left to recover only under the Act, see Demko). Appellant’s Supp. Br. 18. True enough. But if Congress wants one group to recover only as provided by a workers’ compensation statute and another group to recover under the common law, so be it: That’s quintessentially a legislative call. “Whether it makes sense to impose asymmetrical liability ... is a question for Congress, not us, to decide.” Malesko, 534 U.S. at 72, 122 S.Ct. 515.
Many such anomalies, if anomalies they are, already exist in this area. Inmates injured in identical fashion (say, by prison officials’ deliberate indifference) can recover under Bivens if housed at a federally operated prison but not if housed at a privately operated prison. Minneci, 132 S.Ct. at 620, 623-24. Both are federal inmates, both are housed in federal prison, but only one may get Bivens relief. Likewise, a person injured under the Due Process Clause can generally recover under Bivens, see Davis, 442 U.S. at 243-44, 99 S.Ct. 2264, but not when the injury occurs by way of denial of social-security benefits, Schweiker, 487 U.S. at 424, 108 S.Ct. 2460. These cases teach that the specific, alternative (congressional) remedy displaces the general (judicial) Bivens remedy, even if it means creating disparities among potential plaintiffs.
Koprowski is not the first person to raise this concern in the setting of this workers’ compensation statute. . Demko held that a federal prisoner injured on the job could not bring a lawsuit against the United States. 385 U.S. at 153, 87 S.Ct. 382. But this holding created tension with the Court’s prior decision that allowed such lawsuits for inmates injured off the job. United States v. Muniz, 374 U.S. 150, 165-66, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The Demko dissent protested that the majority’s holding created an unjustified anomaly between inmates injured on the job and those injured off of it. See 385 U.S. at 154-56, 87 S.Ct. 382 (White, J., dissenting). No matter, the Court concluded. What mattered, the Court said, *267 was that this plaintiff was covered by the Act’s exclusive workers’ compensation regime.
Adequate remedy ? All that is well and good, Koprowski responds, but none of it changes the reality that he likely will recover less than he would have recovered under Bivens. To make matters worse, he doesn’t have other rights that he does under Bivens, such as “a jury right and [a right to seek] punitive damages.” Appellant’s Supp. Br. 12.
But Koprowski’s premise — that the Act’s remedies are less generous than Bivens — is not necessarily so. As a general matter, Bivens is “more generous to plaintiffs in some respects” but “less generous in others.” Minneci, 132 S.Ct. at 625. That’s the nature of a workers’ compensation system: readily available compensatory relief with no need to prove fault. This case illustrates the point. Suppose Ko-prowski can prove only negligence. He would not recover under Bivens (which requires deliberate indifference, Malesko, 534 U.S. at 73, 122 S.Ct. 515) but would recover under this no-fault Act. Or suppose he cannot produce any evidence of any misconduct. He would not survive summary judgment on a Bivens claim but would recover under the Act.
Even if the Act will be more restrictive than Bivens in some settings, Koprowski’s conclusion does not follow. Alternative remedies can be “less generous” than Bivens and still exclude it — “say, by capping damages,” “forbidding recovery for emotional suffering,” or “imposing procedural obstacles” on the plaintiff. Minneci, 132 S.Ct. at 625. They need not compensate directly for constitutional injuries. Schweiker, 487 U.S. at 427-28, 108 S.Ct. 2460. Some injuries can even “go unre-dressed.” Malesko, 534 U.S. at 69, 122 S.Ct. 515. Koprowski seems to think that the only alternative remedy that would satisfy this inquiry is Bivens itself or something like § 1983. But the key implication of an alternative remedial scheme is that the pros and cons of that regime suffice from Congress’s perspective, not necessarily the litigant’s perspective. And from that perspective, Koprowski has an adequate “avenue for some redress” for the type of injury he suffered. Id.; see 28 C.F.R. § 301.301(b).
Demko confirms this conclusion. The Court noted that, to the extent the Act’s remedies were less generous than tort relief, that decision was intentional; it reflected a conscious choice by Congress to account for the “differing circumstances of prisoners and nonprisoners” and “the special need of [this] class of prisoners.” Demko, 385 U.S. at 152-53, 87 S.Ct. 382. Any perceived inadequacy of the Act’s remedies did not mean the judiciary needed to step in and allow a separate remedy. See id. at 153, 87 S.Ct. 382. It meant that courts must enforce the Act as written. Otherwise, even the existence of § 1983 claims would not prevent implied rights of action against state officials in some settings, namely if the claimant could show that an implied right of action directly under the Constitution would provide more relief than a § 1983 action does.
Deterrence'? But is this alternative system adequate to deter individual officials’ constitutional violations? Koprowski says no. The Act provides relief from the United States, he says, which will do little to deter individual officials.
The problem with this distinction is that the Supreme Court has already rejected it. On several occasions, the Court has held that a Bivens action was precluded by remedies that made “no provision for ... money damages against officials responsible for unconstitutional conduct.” Schweiker, 487 U.S. at 424, 108 S.Ct. 2460; see, e.g., Bush, 462 U.S. at 388, 103 S.Ct. *268 2404. When Congress gives “meaningful remedies against the United States,” the Court instructs, the Bivens remedy has no role to play. E.g., Schweiker, 487 U.S. at 422, 108 S.Ct. 2460 (quotation omitted).
Koprowski’s existing remedies at any rate will deter individual officials in several ways. For one, the officials’ unconstitutional conduct can be brought to light during the remedial proceedings — first before an administrator, 28 C.F.R. § 301.305, then before a committee, id. § 301.306(b), then before the corporation’s Chief Operating Officer, id. § 301.313, then before the courts, see 5 U.S.C. §§ 701-706. For another, the unconstitutional conduct can be addressed through the “remedial mechanisms established by the [Bureau].” Malesko, 534 U.S. at 74, 122 S.Ct. 515; see 28 C.F.R. § 542.10(a). And for still another, the conduct can be laid .bare and stopped by an Ex parte Young action against the officials. See Malesko, 534 U.S. at 74, 122 S.Ct. 515. If an official isn’t deterred by (1) administrative hearings about his conduct, (2) his bosses learning of it, (3) a lawsuit addressing it, and (4) a court ordering it to stop, it’s hard to believe that a money-damages lawsuit, complete with defenses of qualified immunity and indemnity, will do much more in the way of deterrence.
Exclusivity exceptions? Koprowski suggests that some workers’ compensation statutes are not exclusive, as they allow certain claims against certain people. True enough. See, e.g., Mich. Comp. Laws § 418.131(1) (intentional tort exception). But he never contends that this Act contains any such exception. Nor could he. The Act is “the exclusive remedy to protect” inmates injured on the job. Demko, 385 U.S. at 152, 87 S.Ct. 382. It is not our role to create “exceptions to that [exclu- • sive] system without specific legislation to that effect.” Id. at 151, 87 S.Ct. 382 (quotation omitted).
Other Circuits? Three other circuits, I must acknowledge, have come out the other way. See Bagola v. Kindt, 39 F.3d 779, 780 (7th Cir.1994); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir.1996); Smith v. United States, 561 F.3d 1090, 1100-03 (10th Cir.2009). But each one follows outdated reasoning. The Seventh Circuit’s 1997 decision relied on the Carlson dictum, which liberally (and presumptively) extended Bivens, see, e.g., Bagola v. Kindt, 131 F.3d 632, 637-40 (7th Cir.1997), and which the parties agree no longer applies. The Ninth and Tenth Circuits just adopted the Seventh Circuit’s “reasoning ... as [their] own.” Smith, 561 F.3d at 1103; see Vaccaro, 81 F.3d at 857.
The Carlson framework has been abrogated by cases like Malesko, Wilkie, and Minneci. For example, Minneci, decided after all three of these circuit court cases, explains that Wilkie’s “approach,” not Carlson’s, governs the Bivens analysis. 132 S.Ct. at 623, 625. Indeed, the Seventh Circuit, which gave us the first opinion on this issue, has since recognized as much, see Vance v. Rumsfeld, 701 F.3d 193, 198-99 (7th Cir.2012) (en banc). If there is a material division in the courts, it’s between the framework used by these three circuits and the framework used by the Supreme Court today.
The different frame of reference explains each of these outcomes. One says, for instance, that inmates must be able to recover under Bivens or else they have no remedy against the individual officials. But, as explained, that matters not under the updated framework. With the inverted frame of reference, these circuits also see the Act’s no-fault scheme as a reason to apply Bivens — to place blame on certain wrongdoers. But again, the individual officials can be deterred in other ways. And *269 if anything, with the proper frame of reference, the no-fault scheme cuts the other way. It shows just what Congress is willing to give up in this quid pro quo: No-fault compensation in exchange for no tort liability.
Not one of these cases, moreover, applies Hui. And for good reason: The Court decided Hui after each of these cases. For my part, I do not see how one can grant relief to Koprowski without slighting Hui.
Nor does Congress’s purported “acquiescence” in these decisions tell us anything. Supra at 253. “We do not expect Congress to make an affirmative move every time a lower court indulges in an erroneous interpretation.” Jones v. Liberty Glass Co., 332 U.S. 524, 534, 68 S.Ct. 229, 92 L.Ed. 142 (1947). But if its acquiescence means something, surely Congress has acquiesced more in Demko and in the unbroken, thirty-six-year line of Supreme Court precedent limiting implied rights of action than it has in three circuit court cases going against the grain.
The majority seeing things differently, I respectfully dissent.