**Dr. Eileen T. MENDEZ, Plaintiff, Appellant,**

v.

**Dr. Robert BELTON, Presbyterian Hospital, et al., Defendants, Appellees.**

**No. 83–1964.**

United States Court of Appeals, First Circuit.

Argued June 5, 1984.

Decided July 18, 1984.

Robert J. Walser, San Juan, P.R., for plaintiff, appellant.

Enrique S. Lamoutte, Asst. U.S. Atty., Hato Rey, P.R., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for Dr. Robert Belton.

Igor Dominguez, San Juan, P.R., with whom William Estrella, San Juan, P.R., was on brief, for Presbyterian Hosp., et al.

Before COFFIN and BREYER, Circuit Judges, and DOYLE,* Senior District Judge.

COFFIN, Circuit Judge.

Dr. Eileen T. Mendez appeals from an award of summary judgment in a civil rights action arising out of the revocation of her hospital staff privileges. The defendants include Presbyterian Hospital, its trustees, some of its administrators and doctors, and Dr. Robert Belton, a United States Public Health Service official.

As the Chief of Clinical Services at the Public Health Service's Outpatient Clinic in San Juan, Puerto Rico, Dr. Belton supervised the delivery of health care to Public Health Service patients. On December 20, 1978, Dr. Belton wrote a letter to Dr. Mendez and sent copies to certain administrators and doctors at Presbyterian Hospital. In the letter, Dr. Belton criticized Dr. Mendez for what he perceived to be unnecessary surgery performed on two Public Health Service patients by Dr. Mendez in Presbyterian Hospital. Dr. Belton also criticized Dr. Mendez's failure to follow various Public Health Service regulations.

Dr. Freddie Boras, the medical director at Presbyterian Hospital, asked Dr. Mendez to respond to the Belton letter. She did so, substantially denying Dr. Belton's allegations. Despite her explanations, the hospital's Executive Committee suspended Dr. Mendez from the hospital staff. She

appealed that decision to the hospital's Judicial Review Committee, which held a hearing at which Dr. Mendez, who was represented by counsel, presented evidence and cross-examined witnesses, including Dr. Belton. The Judicial Review Committee affirmed the Executive Committee's decision to suspend Dr. Mendez. Dr. Mendez appealed to the hospital Board of Directors, which affirmed following a hearing.

She then filed this action. Her amended complaint alleges violations of, *inter alia*, 42 U.S.C. §§ 1983 & 1985(3), and the Fifth and Fourteenth Amendments of the Constitution. The district court granted summary judgment on all counts to the various defendants for separate reasons. We review the district court's rulings in order.

## I. *State Action Under 42 U.S.C. § 1983*

Dr. Mendez claims that the non-federal defendants discriminated against her on the basis of race and sex in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. The statute does not reach private action, but rather "prohibits interference with federal rights under color of state law." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982). Where nominally private defendants, such as the hospital and its officers and doctors, are sued under § 1983 and the Fourteenth Amendment, the court must determine whether "the alleged infringement of federal rights [may be] 'fairly attributable to the State'". *Id.* at 838, 102 S.Ct. at 2770 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982)). The "state action" determination requires a fact-dependent inquiry into the degree of state control and involvement.

Presbyterian Hospital is a private, non-profit corporation that has detailed requirements for staff membership. The hospital is tax-exempt and is subject to a panoply of government health care regulations. It received federal financial assistance under the Hill-Burton program, 42

---

* Of the Western District of Wisconsin, sitting by designation.

U.S.C. § 291 *et seq.*, administered by the Puerto Rico Health Department for the construction of an addition to the hospital. It also receives Medicare and Medicaid funds.

We agree with the district court's conclusion that Dr. Mendez has failed to prove that the hospital acted "under color of state law" in deciding to suspend her staff privileges. Every circuit that has addressed the issue has decided that extensive government regulation and the receipt of Hill-Burton construction funds, Medicare and Medicaid funds, and tax-exempt status do not transform an otherwise private hospital into a governmental actor.[1] *See, e.g., Loh-Seng Yo v. Cibola General Hospital,* 706 F.2d 306, 307–08 (10th Cir.1983); *Hodge v. Paoli Memorial Hospital,* 576 F.2d 563, 564 (3d Cir.1978) (per curiam) (citing many cases). The Fourth Circuit formerly held a contrary view, but decided to follow the other circuits based on its reading of *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1978). *See Modaber v. Culpeper Memorial Hospital, Inc.,* 674 F.2d 1023, 1025–26 & n.10 (4th Cir.1982).

Dr. Mendez has alleged, without citation to the record, that the hospital receives "major financial support" through annual appropriations from the Puerto Rico legislature. Even assuming the truth of this unsubstantiated fact, the "receipt of government funds does not render the government responsible for a private entity's decisions concerning the use of those funds." *Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d at 450; *see Blum v. Yaretsky,* 457 U.S. 991, 1010, 102 S.Ct. 2777, 2788, 73 L.Ed.2d 534 (1982); *Rendell-Baker v. Kohn,* 457 U.S. at 840, 102 S.Ct. at 2771.

Dr. Mendez further alleges, again without record citation, that the Puerto Rico Government Development Bank approved the financing for the new wing of the hospital on the condition that the hospital maintain a staff subject to the approval of the bank. Ordinarily, we would not address this argument because of appellant's failure to support such a critical factual assertion with a reference to the appendix or record. Fed.R.App.P. 28(a)(3) & (e); *see Falu v. Secretary of Health & Human Services,* 703 F.2d 24, 27 (1st Cir.1983) (per curiam); *Mitchel v. General Electric Co.,* 689 F.2d 877, 878–79 (9th Cir.1982) (per curiam); *United States v. One Motor Yacht Named Mercury,* 527 F.2d 1112, 1113–14 (1st Cir.1975). However, Dr. Mendez contends that information concerning the control of the Development Bank over the hospital staff is absent solely because of the hospital's dilatory behavior during discovery, including the hospital's failure to comply with court orders to deliver requested information to Dr. Mendez. In fact, the court denied defendants' first motion for summary judgment on the issue of state action, because defendants had failed to respond properly to Dr. Mendez's discovery requests on the subject of state involvement with the hospital. App. 33–34, Opinion and Order (March 7, 1983). Six months later, the court granted defendants' motion for summary judgment, and in so doing, decided that the hospital's actions did not constitute state action.

■ Although defendants' pretrial behavior troubles us, we find no reason to hold that the district court abused its broad discretion to award summary judgment before both parties had indicated full satisfaction with the extent of discovery. The hospital apparently did not respond to Dr. Mendez's interrogatories seeking the hospital's "official financial reports" and information on all of the hospital's contracts with government agencies for the years 1975–1980 inclusive. These interrogatories do not refer specifically to the Develop-

---

1. Dr. Mendez has alleged causes of action against both federal and state defendants. Defendants' actions that could be fairly attributable to the federal government would constitute government action for Fifth Amendment purposes. Defendants' actions fairly attributable to state or local government would constitute state action under § 1983 and the Fourteenth Amendment. The standards for determining the existence of federal or state action are identical. *Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d 447, 449 (1st Cir.1983).

ment Bank, and even had these interrogatories been answered, Dr. Mendez may not have found the "state action" evidence that she needed. Further, it seems likely that defendants were not the sole source of information concerning the terms of a government-financed loan. The district court was more familiar with the needs and behavior of both parties, and Dr. Mendez has not convinced us that the district court abused its discretion in granting summary judgment despite the pendency of Dr. Mendez's rather generalized discovery requests.

## II. *Conspiracy Under 42 U.S.C. § 1985(3)*

■ Dr. Mendez has also alleged that the defendants conspired to deprive her of her staff privileges because she is a non-caucasian woman. She has alleged little more than that Dr. Belton sent copies of his letter to the other defendants and that he then repeated the contents of the letter at the Executive Committee hearing. Under § 1985(3), a plaintiff must file a detailed factual pleading to survive a motion to dismiss, *see Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981); *Slotnick v. Garfinkle*, 632 F.2d 163, 165–66 (1st Cir.1980) (per curiam), and here, at the summary judgment stage, Dr. Mendez offered nothing beyond conclusory statements unsupported by affidavits. Nor does her deposition illuminate her conspiracy claim. The district court properly dismissed the § 1985(3) claim.

## III. *Immunity of Dr. Belton*

Having eliminated Dr. Mendez's alleged causes of action under 42 U.S.C. §§ 1983 & 1985(3), and with Dr. Belton as the sole remaining defendant, we construe Dr. Mendez's complaint to allege one colorable claim: a violation by a federal official of the equal protection component of the Fifth Amendment's due process clause.

The district court held that 42 U.S.C. § 233(a) cloaked Dr. Belton, a Public Health Service official, with absolute immunity against suits for damages arising

out of the performance of his official duties. The court construed the statute to limit Dr. Mendez's remedies to a suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2672.

■ We do not join the district court's broad reading of the absolute immunity statute, which provides:

"(a) The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim." 42 U.S.C. § 233(a).

The statute protects Public Health Service officers or employees from suits that sound in medical malpractice. Dr. Mendez's action against Dr. Belton for alleged acts of intentional discrimination on the basis of race and sex occurring in the course of the professional peer review process is not the sort of malpractice claim that 42 U.S.C. § 233(a), and similar statutes protecting doctors for NASA, 42 U.S.C. § 2458a, the Veterans Administration, 38 U.S.C. § 4116(a), and the armed forces, 10 U.S.C. § 1089, meant to protect against. *See* 1976 U.S.Code Cong. & Admin.News 4443, 4445, 4451 (these statutes provide absolute immunity against "what is commonly termed 'malpractice' "); *cf. Lojuk v. Quandt*, 706 F.2d 1456 (7th Cir.1983) (no immunity for VA personnel under 38 U.S.C. § 4116(a) from suits for battery arising from medical procedures performed without patient's consent); *Smith v. DiCara*, 329 F.Supp.

**20**

439, 442 (E.D.N.Y.1971) (no immunity for VA doctor under 38 U.S.C. § 4116(a) from suit for defamation).

Cases in which defendants have successfully invoked these immunity statutes typically involve claims by patients against doctors for damages caused by improper medical treatment. *See, e.g., Baker v. Barber,* 673 F.2d 147, 148 (6th Cir.1982) (per curiam) (alleging medical malpractice against Army physicians); *Apple v. Jewish Hospital & Medical Center,* 570 F.Supp. 1320, 1321 (E.D.N.Y.1983) (malpractice action following Caesarian delivery); *Benitez v. Presbiterian Hospital,* 539 F.Supp. 470, 471–72 (D.P.R.1982) (patient's survivors' action alleging improper professional care); *Flickinger v. United States,* 523 F.Supp. 1372, 1373 (W.D.Pa.1981) (patient's action for negligent diagnosis).

In *Castillo v. United States,* 707 F.2d 422, 424–25 (9th Cir.1983), the court stated that 42 U.S.C. § 233 would provide legal representation for a National Health Service Corps doctor who was a member of a peer review committee that restricted another physician's surgical practice. Without addressing the language of § 233(a) that appears to limit immunity to traditional malpractice actions, the court stated that the government would provide legal representation merely because the alleged acts occurred within the scope of employment. Because the *Castillo* court did not directly analyze the issue that faces us, we do not feel compelled to follow its course.

 Although Dr. Belton does not enjoy absolute immunity in this action, he must nonetheless prevail on the merits. The defendants, including Dr. Belton, supported their summary judgment motions with affidavits and other relevant evidence indicating that Dr. Belton's letter and the subsequent revocation of Dr. Mendez's staff privileges did not result from intentional discrimination by Dr. Belton. We agree with the district court that in the face of the defendants' submissions, Dr. Mendez "failed to establish the existence of a genuine factual controversy." App. 56. Although we are reluctant to affirm grants

of summary judgment to defendants in cases that hinge on the subjective intent of defendants, *see, e.g., Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922, 928–29 (1st Cir.1983), a plaintiff opposing a motion for summary judgment must present sufficient probative evidence to convince the court that genuine, material factual issues remain to be resolved by the trier of fact. *Id.* at 929 (citing cases). Dr. Mendez has not done so. Her only evidence of Dr. Belton's discriminatory animus, given that Dr. Belton's testimony before the Judicial Review Committee is not part of the record, includes his letter itself and the fact that he testified before the Judicial Review Committee, which affirmed the suspension of Dr. Mendez's privileges.

*Affirmed.*