**Jerrell BRIGNAC, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

CIVIL ACTION NO. 16-CV-02217-AT

United States District Court,
N.D. Georgia, Atlanta Division.

Signed 03/09/2017

Jason L. Nohr, Cauthorn Nohr & Owen, Marietta, GA, for Plaintiff.

Darcy F. Coty, U.S. Attorneys Office, Atlanta, GA, for Defendant.

## ORDER

Amy Totenberg, United States District Judge

This matter is before the Court on Defendant United States of America's Motion to Dismiss [Doc. 6]. Plaintiff is seeking damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), for personal injuries allegedly caused by the negligence of The Family Health Centers of Georgia, Inc. ("Family Health Centers")[1] and the United States Penitentiary ("USP"). In particular, Plaintiff alleges that Dr. Lewis Jackson ("Jackson") sexually assaulted him during a medical examination at Family Health Centers and that Family Health Centers negligently hired and retained Jackson in light of Jackson's

prior sexual misconduct at the USP. Plaintiff also alleges that the USP in Atlanta, Georgia negligently failed to report Jackson's misconduct to state licensing authorities, particularly the Georgia Composite Medical Board[2] and the National Practitioner Data Bank ("NPDB"). Defendant has moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that the Court lacks subject matter jurisdiction over Plaintiff's claims and Plaintiff has failed to state a claim as a matter of law.

For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss [Doc. 6].

## I. FACTUAL BACKGROUND[3]

On August 29, 2012, Plaintiff visited Family Health Centers for medical treatment and was seen by Jackson, a physician employed there. (Compl. ¶ 7.) Plaintiff alleges that during the course of the medical examination, Jackson "instructed Plaintiff to remove his clothing" and "grabbed Plaintiff's penis and placed it in his mouth without Plaintiff's consent." (*Id.* ¶ 11.) Plaintiff reported this incident to the Marietta Police Department on the day it occurred. (*Id.* ¶ 13.)

██ Jackson had been working at Family Health Centers since July 23, 2012, a little over a month before seeing Plaintiff. (Pl.'s Sur-reply, Ex. A at 15.)[4] Prior to

---

1. Plaintiff and Defendant refer interchangeably to Family Health Centers as West End Medical Center. For convenience, the Court will refer to the health center as Family Health Centers.

2. Plaintiff and Defendant refer to the Georgia Composite Medical Board as the "Georgia Board of Medical Examiners." However, under Georgia law, the state medical board is properly referred to as the Georgia Composite Medical Board. *See* O.C.G.A. § 43-34-2.

3. The factual background set forth below is based on Plaintiff's allegations, which are construed as true and in the light most favorable to Plaintiff on a motion to dismiss.

4. The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201(b); *Cash Inn of Dade, Inc. v. Metro. Dade Cty.*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases.")

working at Family Health Centers, he had worked as a physician at a District of Columbia Jail ("D.C. Jail") for some time, and then at the USP in Atlanta, Georgia from approximately January 2011 through July 11, 2012. (Compl. ¶ 16.)

Jackson has an admitted record of sexually assaulting patients when employed as a physician. While working at the USP, Jackson sexually assaulted three inmate patients in September and October of 2011. (*Id.*) The USP terminated his employment because of these incidents.[5] (*Id.*) Subsequently on July 24, 2012, he was indicted in the D.C. Superior Court in the District of Columbia for sexually abusing an inmate on November 10, 2008 at the D.C. Jail. (Def.'s Mot. Dismiss at 3.) Jackson was also indicted in this Court on August 28, 2012, for sexually abusing the three inmates at the USP in September and October of 2011. (*Id.*) On January 22, 2013, Jackson ultimately pled guilty to a charge of sexual abuse in the District of Columbia, and also pled guilty to sexual abuse charges pertaining to the assaults at the USP in this Court on November 26, 2012. (*Id.*); *United States v. Jackson*, No. 1:12-cr-287-AT, (N.D. Ga. Aug. 28, 2012).

Plaintiff brings two counts against Defendant based on the actions of Defendant's agents and employees at Family Health Centers and the USP. In Count 1, Plaintiff claims that Defendant negligently hired and retained Jackson because Defendant "knew or should have known of Jackson's propensity for mistreating and engaging in inappropriate dealings with his patients prior to hiring him as a physician" and before Plaintiff's injuries on August 29, 2012. (Compl. ¶ 15.) Plaintiff argues that "any reasonable investigation into Jackson's background and employment would have revealed his prior mistreatment of his patients" because Jackson was "terminated for cause" from his duties at the USP for sexually assaulting three inmates. (*Id.* ¶¶ 16, 17.) In Count 2, Plaintiff alleges that Defendant negligently failed to report Jackson's misconduct to state licensing authorities as required by O.C.G.A. § 31-7-9. (*Id.* ¶ 39.) Plaintiff brings both of these counts under the FTCA, 28 U.S.C. § 1346(b), which authorizes legal actions against the United States for money damages caused by the negligent or wrongful acts or omissions of U.S. government employees acting within the course of their employment.

Defendant moves to dismiss Count 1 for lack of subject matter jurisdiction on three grounds. First, Defendant argues that Plaintiff's claim for negligent hiring and retention must be dismissed because the FTCA's provisions for jurisdiction, sovereign immunity waiver, and remedy are limited in connection with certain federally funded health centers to "acts or omissions

Here, the Court takes judicial notice of the fact that Jackson was employed at Family Health Centers as early as July 23, 2012. This is based on the U.S. Department of Homeland Security I-9 Employment Eligibility Verification form that Plaintiff attached to its Surreply, which states that Jackson began employment with Family Health Centers on July 23, 2012 and which includes the signatures of both Jackson and the Human Resources Assistant at Family Health Centers. (Doc. 15, Ex. A at 15.)

**5.** Plaintiff alleges Jackson sexually assaulted three inmates in September and October of 2011, but he was not terminated from the USP until July 11, 2012, at least eight months later. (Compl. ¶ 16.) Nevertheless, Plaintiff alleges the USP terminated Jackson because of these incidents. (*Id.*) Though the Complaint does not explain this gap in time, it is not necessarily fatal to Plaintiff's claims, since the USP may not have become aware of the incidents until July 2012 or in the preceding months. The Court notes this gap in the evidence solely as an issue the parties may want to address going forward, not for purposes of assessing pleading sufficiency.

related to the performance of medical, surgical, dental, or related functions." (Def.'s Reply at ·3 (citing 42 C.F.R. § 6.1).) According to Defendant, these "related functions" do not extend to a claim that a federally funded health center engaged in negligent hiring and retention.[6] (Def.'s Reply at 3.) Second, Defendant argues that Plaintiff's negligent hiring and retention claim must be dismissed because it is barred by the intentional tort exception, 28 U.S.C. § 2680(h), which bars claims arising out of an assault or battery under the FTCA. (*Id.* at 11.) Third, Defendant argues that Count 1 must be dismissed because it is barred by the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), which bars claims arising out of discretionary conduct. (Def.'s Mot. Dismiss at 7-12.) For Count 2, Defendant argues that Plaintiff's reliance on O.C.G.A. § 31-7-9 regarding failure to report is legally inapposite, and therefore Plaintiff has failed to identify a duty owed by the United States to Plaintiff. (*Id.* at 14.)

In response, Plaintiff argues that Count 1 is a "related function" to the provision of medical services and, as a result, Plaintiff's claim is covered under the FTCA. (Pl.'s Sur-reply at 5.) While Plaintiff does not address the applicability of the intentional tort exception, Plaintiff does argue that the discretionary function exception is inapplicable to Count 1 because the discretionary function exception does not apply to circumstances where the Government "fail[s] to act after notice of illegal action." (Pl.'s Resp. at 6.) For Count 2, Plaintiff does not address Defendant's argument about its lack of duty to report under Georgia law. Instead, Plaintiff simply argues that the USP failed to report Jackson's misconduct "immediately . . . to the

appropriate law enforcement authorities." (Pl.'s Resp. at 7.)

## II. LEGAL STANDARD

The Court first considers Defendant's Motion to Dismiss Count 1 for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1). It will then consider Defendant's Motion to Dismiss Count 2 for failure to state a claim under Rule 12(b)(6) to the extent jurisdiction allows such review. *See* 5B Charles A. Wright et al., *Fed. Prac. & Proc. Civ.* § 1350 (3d ed. 1998) ("[T]he cases are legion stating that the district court should consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, [other 12(b) ] defenses and objections become moot and do not need to be determined by the judge."); *see also McCants v. Alabama-W. Florida Conference of United Methodist Church, Inc.*, 372 Fed.Appx. 39 (11th Cir. 2010) (per curiam); *Jones v. State of Ga.*, 725 F.2d 622, 623 (11th Cir. 1984).

### A. Count 1: Legal Standard Governing Rule 12(b)(1)

This Court should dismiss a complaint under Rule 12(b)(1) only where it lacks jurisdiction over the subject matter of the dispute. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may be based on either a facial or factual challenge to the complaint. *See McElmurray v. Consol. Gov't of Augusta–Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter juris-

---

6. Defendant raises its second and third arguments in its Reply. Although the Court generally does not consider arguments raised for the first time in a reply brief, *Jackson v.*

*United States*, 976 F.2d 679, 681 n.1 (11th Cir. 1992), the Court allowed Plaintiff to file a Sur-reply, and therefore the Court will address Defendant's arguments in its Reply.

diction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In this sense, a facial challenge equips a plaintiff with safeguards similar to those afforded by a Rule 12(b)(6) motion for failure to state a claim and limits the court to a comparable scope of review. *See id.* Thus, when reviewing a facial attack on jurisdiction, the Court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *See id.*; *see also Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Here, Defendant's Motion to Dismiss is a facial attack because it argues that the FTCA bars Plaintiff's claim as a matter of law, not as a factual matter.[7] (*See* Def.'s Mot. Dismiss at 5-12). Accordingly, the Court will take as true the allegations in Plaintiff's Complaint for the purpose of ruling on Defendant's Motion to Dismiss.

### B. Count 2: Legal Standard Governing Rule 12(b)(6)

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Duke v. Cleland*, 5 F.3d 1399,

1402 (11th Cir. 1993). Plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

## III. DISCUSSION

### A. The FTCA and the FSHCAA

██ As a general principle, the United States "may not be sued without its consent...." *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The FTCA, however, is an example of the federal government consenting to be sued for certain types of actions. The FTCA provides that the United States may be sued "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 42 U.S.C. § 1346(b). Moreover, the FTCA provides that a suit against the United States is the exclusive remedy for these sorts of claims. 42 U.S.C. § 2679 ("Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded.").

██ The Federally Supported Health Centers Assistance Act ("FSHCAA"), 42

---

7. Unlike in *Lawrence*, the merits of this case are not "inextricably intertwined" with the jurisdiction of this case. *Lawrence*, 919 F.2d at 1529. In other words, resolving Defendant's arguments about the proper interpretation of the FTCA and its exceptions does not resolve a necessary element of Plaintiff's tort claim. *See id.* The Court therefore construes Defendant's Motion to Dismiss Count 1 as a facial attack.

U.S.C. § 233, extends the application of the FTCA to certain public health entities, their employees, and qualified contractors receiving federal grants under 42 U.S.C. § 254(b). The entities typically covered by the FSHCAA are community health centers that receive federal grants to serve underprivileged populations regardless of their ability to pay for service. H.R. Rep. No. 104-398 at 5 (1995). Congress enacted the FSHCAA to prevent these community health centers from having to use their federal funds to purchase costly medical malpractice insurance—"one of the most significant expenses for health centers." *Id.* At the time of the FSHCAA's enactment, community health centers were utilizing a large percentage of their federal funds to pay for malpractice insurance premiums, and Congress sought to redirect these funds towards patient care. *Id.* at 6. Thus, the FSHCAA broadened the FTCA to include these community health centers, thereby granting them and their employees "absolute immunity ... for actions arising out of the performance of medical or related functions within the scope of their employment ... [and] limit[ing] recovery for such conduct to suits against the United States." *Hui v. Castaneda,* 559 U.S. 799, 806, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010).

For an entity to be covered under the FSHCAA, it must be deemed an employee of the Public Health Service ("PHS") by the Secretary of Health and Human Services ("HHS"). 42 U.S.C. § 233(h). HHS makes this determination after reviewing an entity's application and assessing whether or not it meets certain qualifications. *Id.* In particular, HHS is not authorized to deem an entity a PHS employee unless it first determines that the entity has done the following: "implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or

health-related functions performed by the entity," and "has reviewed and verified the professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians and other licensed or certified health care practitioners...." *Id.*

Furthermore, even if an entity is deemed a PHS employee, the FSHCAA's grant of immunity to the entity is still limited to claims "arising out of the performance of medical or related functions." *Hui,* 559 U.S.at 806, 130 S.Ct. 1845; 42 U.S.C. § 233(a). Specifically, Section 233(a) of the FSHCAA provides:

> The remedy against the United States provided by [The Federal Torts Claims Act] ... for damage for personal injury, including death, *resulting from the performance of a medical, surgical, dental, or related functions* ... by any commissioned officer or employee of the [PHS] while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a) (emphasis added). Typically, cases involving Section 233(a) arise when a patient sues an entity or its employee for injuries resulting from medical treatment, and the entity or employee seeks coverage under this provision in order to be immune from suit. The present case is somewhat different in that Plaintiff, the patient, is the one seeking Section 233(a) coverage so that he can properly sue the United States for his injuries.

**B. FSHCAA Limitation of Recovery to Acts or Omissions Related to the Performance of Medical, Surgical, Dental, or Related Functions**

■ Defendant argues that FSHCAA coverage for a deemed entity is limited to

"acts or omissions related to the performance of medical, surgical, dental, or related functions" and that hiring employees does not typically involve the performance of these functions. (Def.'s Reply at 3.) Plaintiff does not dispute the assertion that coverage under the FSHCAA is limited to acts or omissions related to the performance of medical, surgical, dental, or related functions. Instead, Plaintiff argues that negligent hiring and retention is a "related function" to the provision of medical services, and therefore Plaintiff's claim is covered under the FSHCAA. (Pl.'s Sur-reply at 5.)

Courts have grappled with the exact scope of coverage under Section 233(a) of the FSHCAA. For example, in *Mendez v. Belton*, the circuit court declined to extend Section 233(a) coverage for claims arising from an employment discrimination dispute. 739 F.2d 15 (1st Cir. 1984). The plaintiff, a doctor, had sued a hospital and some of its administrators and doctors for discriminating against her on the basis of race and sex in revoking her hospital staff privileges. *Id.* at 17. The lower court found that one defendant doctor was immune from suit under Section 233(a) because the damages arose from the performance of his official duties in the hospital, but the circuit court reversed. *Id.* at 19. The circuit court reasoned that the FSHCAA protects PHS employees from "suits that sound in medical malpractice," and the plaintiff's claim of discrimination in the professional prior review process "is not the sort of malpractice claim that 42 U.S.C. § 233(a) ... meant to protect against." *Id.* Accordingly, the circuit court denied immunity under Section 233(a) for the doctor. *Id.*

In *Logan v. St. Charles Health Council*, the court declined to extend Section 233(a) coverage in another employment-related dispute. No. 1:06CV00039, 2006 WL 1149214 (W.D. Va. May 1, 2006). The plaintiff brought suit against her employer medical center and the physicians who worked at the medical center for fraudulently using her name and identification code to write prescriptions. *Id.* at *1. The defendants argued that they were immune from suit under Section 233(a) and that the proper defendant was the United States. *Id.* The court disagreed with the defendants, finding that "the statute was intended to cover injuries arising out of the doctor-patient relationship, rather than those arising from an employment relationship." *Id.* at *2. Even so, the court made a point of limiting the scope of its decision to the facts before it: "[W]hile § 233(a) is not expressly limited to malpractice actions, the plain language of the statute and the case law interpreting it indicate that Congress did not intend the statute to extend to employment disputes like the one in this case." *Id.* at *3.

The Second Circuit's decision in *Cuoco v. Moritsugu* emphasized that Section 233(a)'s coverage is dependent upon the particular factual circumstances giving rise to a plaintiff's claim and that the denomination of a claim as "malpractice" is not the sine qua non determinant of coverage under Section 233(a). 222 F.3d 99 (2d Cir. 2000). *Cuoco* involved the constitutional claims of a prisoner who was a preoperative transgendered individual who sought to receive estrogen treatments while she was detained in the federal prison facility. *Id.* at 103. The prison physician and principal medical official refused to authorize estrogen treatments for the prisoner, who subsequently suffered "psychological and physical withdrawal symptoms." *Id.* at 104. Relying on the *Mendez* decision, the lower court had denied immunity for the prison physician and principal medical official under Section 233(a) because "Plaintiff has not brought medical malpractice claims, but rather a claim alleging violation of her constitutional rights." *Id.*

Analyzing the facts before it, the circuit court reversed and found that the "complained of behavior occurred entirely in [the prison physician's] capacity as a doctor responsible for, and in the course of rendering medical treatment for, [the prisoner]." *Id.* at 109. Similarly, it found the medical official's "alleged misdeeds related only to his decision ... not to authorize a particular medical treatment for [the prisoner]." *Id.* For this reason, the Court of Appeals concluded that the plaintiff's claims fell within the purview of Section 233(a).[8] *Id.* The Court explained that *Mendez* "does not stand for the proposition that § 233(a) applies *only* to medical malpractice suits" or that immunity in turn only extends to medical employees in malpractice cases. *Id.* "When Congress has sought to limit immunity to medical malpractice claims it has done so explicitly." *Id.* (citing to 38 U.S.C. § 7316(a)(1), which only provides a remedy for damages "allegedly arising from malpractice or negligence of a medical care employee" of the Veterans Health Administration). *Id.* Rather, the circuit court read *Mendez* as finding Section 233(a) inapplicable to the particular facts of that case, since the employment discrimination claim in *Mendez* "had nothing to do with the 'performance of medical ... or related functions.'" *Id.*

Few cases exist where courts have specifically interpreted the "related functions" language of Section 233(a).[9] But two district court cases interpreting this language are particularly illuminating with respect to the instant case.

In *Teresa T. v. Ragaglia*, the court held that a physician's duty to report suspected child abuse, as mandated by state statute, was "inextricably woven" into the performance of medical functions and therefore covered under § 233(a). 154 F.Supp.2d 290, 300 (D. Conn. 2001). The plaintiff alleged that the defendants, a physician and his employer medical center, were negligent by failing to report the child abuse suffered by Teresa T. to state authorities as the law required. *Id.* at 297. The defendant physician sought immunity under Section 233(a) so as to substitute the United States as the proper defendant. *Id.* at 293–97. The court stated that the immunity provided by Section 233(a) "is not limited to claims for medical malpractice" and that "[t]he immunity extends to claims related to the performance of medical, surgical, dental, *or related functions* against those employees acting within the scope of their employment." *Id.* at 299–300 (internal quotations omitted). The court held that the duty to report suspected child abuse is a "related function to the doctor's performance of medical services, because it adds a required element to the doctor's evaluation of the patient." *Id.* at 299. The court therefore also concluded that the FSHCAA provided immunity to the defendant physician "vis a vis his statutory obligation because the duty [was] inextricably woven into his performance of medical functions." *Id.* at 300; *see also Mele v. Hill Health Ctr.*, No. 3:06CV455SRU, 2008 WL 160226, at *3 (D. Conn. Jan. 8, 2008) (granting immunity under Section 233(a) for a clinic worker who allegedly improperly disclosed the

---

8. The circuit court therefore concluded that the Bureau of Prisons physician and principal medical official were entitled to personal immunity based on their decision not to authorize a medical treatment for a prisoner. *Id.* at 107-08.

9. The Court also notes that a variety of other federal statutes contain provisions similar to

this one in the FSHCAA, but these statutes more narrowly define the "related functions" language. For example, the Gonzalez Act, 10 U.S.C. § 1089(a), grants FTCA coverage to armed forces medical personnel for the "performance of medical, dental, or related *health care* functions." 10 U.S.C. § 1089(a) (emphasis added); *see also* 51 U.S.C. § 20137(a); 22 U.S.C. § 2702(a); 38 U.S.C. § 7316(a).

plaintiff's medical information, since the claim concerned "the related function of ensuring the privacy of patient medical information").

The district court in *La Casa de Buena Salud v. United States* adopted the reasoning of *Teresa T.*, stating that "the purpose of the FSHCAA is to provide immunity to medical centers and medical personnel for performing duties 'inextricably woven into [their] performance of medical functions.'" No. CIV 07-238 JB/RHS, 2008 WL 2323495, at *20 (D.N.M. Mar. 21, 2008) (quoting *Teresa T.*, 154 F.Supp.2d at 299–300). Notably, *La Casa* involved a claim of negligent hiring, supervision, and retention against a physician. Dr. James Smith was an employee of La Casa de Buena Salud ("La Casa"), a "deemed" community health center, and he had entered a plea to a charge of first degree murder for the death of Laura McNaughton. *Id.* at *1–2. Smith had seen McNaughton as a patient at La Casa more than six months prior to her murder, and McNaughton's estate brought claims of negligent hiring, supervision, and retention of Smith against La Casa. *Id.* at *2. La Casa sought for the district court to determine that it was immune from suit under Section 233(a) for the negligent hiring, supervision, and retention of Smith. *Id.* at *8. While the *La Casa* court ultimately held that Section 233(a) did not apply to the plaintiff's negligent hiring, retention, and supervision claim, the court recognized that FSHCAA coverage under Section 233(a) could potentially extend to such claims. *Id.* at *18–20. The court explained that the facts unique to *La Casa* precluded coverage under Section 233(a). *Id.* at *18 ("While negligent hiring, supervision, and retention of medical staff may sometimes be related to the

provision of medical services, and thus medical malpractice, here there is no allegation that the [decedent's death was] in any way related to the provision of medical treatment or medical care.").[10] The court reasoned that if the "events giving rise to the action" are related to the provision of medical services, then a claim could be covered under § 233(a). *Id.*

In light of these cases, the Court agrees with Plaintiff that his negligent hiring and retention claim is a "related function" to the provision of medical services under the facts as alleged, and therefore the claim is covered under Section 233(a). Family Health Centers is a deemed entity under the FSHCAA that selects physicians to provide medical services to its patients. The hiring and retention of its physicians is directly connected to its provision of medical care. For instance, to become a deemed entity in the first place, Family Health Centers is required to show that it has "reviewed and verified the professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians and other licensed or certified health care practitioners." 42 U.S.C. § 233(h). Section 233(h) can be viewed as "add[ing] a required element" to the provision of medical care by Family Health Centers. *Teresa T.*, 154 F.Supp.2d at 299. Hence, Family Health Center's obligations under Section 233(h) for vetting its physicians are "inextricably woven into [its] performance of medical functions." *Id.* at 300.

Furthermore, all of the "events giving rise to [this] action" were related to Jackson's provision of medical treatment to Plaintiff at Family Health Centers. *La Casa*, 2008 WL 2323495, at *18. Plaintiff

10. Specifically, the dentist in *La Casa* murdered a patient after seeing her for a dental examination over six months earlier. *Id.* at *1-2. There were no facts presented that he saw

her again before the murder. *Id.* at *2. In short, the facts made it clear that the dentist's act of murdering the patient was unrelated to his treatment of her at the clinic.

was sexually assaulted by Jackson during the course of his medical examination. Construing the facts in the light most favorable to Plaintiff, the Family Health Centers negligently hired and retained Jackson to provide medical care to Plaintiff (and other patients) despite his prior sexual misconduct. These facts are distinct from the facts in *La Casa*, where the physician's harm to the patient—which allegedly gave rise to the negligent hiring, supervision, and retention claim against the health center—had nothing to do with the provision of medical services. *La Casa*, 2008 WL 2323495, at *20.

Even if Section 233(a) was more narrowly construed to only cover claims arising out of medical malpractice, Plaintiff's claim would likely still be covered under Section 233(a). Under Georgia law, an action for medical malpractice is defined as:

> [A]ny claim for damages resulting from the death of or injury to any person *arising out of*: (1) Health, medical, dental, or surgical service, diagnosis, prescription, treatment, or care rendered by a person authorized by law to perform such service or by any person acting under the supervision and control of the lawfully authorized person; or (2) Care or service rendered by any public or private hospital, nursing home, clinic, hospital authority, facility, or institution, or by any officer, agent, or employee thereof acting within the scope of his employment.

O.C.G.A. § 9-3-70 (emphasis added). The "arising out of" language in this statute supports the proposition that negligent hiring and retention claims can constitute a form of medical malpractice. Indeed, Georgia courts have interpreted the statute accordingly. *See Ray v. Scottish Rite Children's Medical Center, Inc.* 251 Ga. App. 798, 555 S.E.2d 166, 168–69 (2001)

(finding that a negligent retention claim against a hospital "for injuries which arose out of the care rendered by [one of its doctors], acting within the scope of her employment, constitutes an action for medical malpractice"); *see also Blackwell v. Goodwin* 236 Ga.App. 861, 513 S.E.2d 542, 545 (1999); *Georgia Physical Therapy, Inc. v. McCullough*, 219 Ga.App. 744, 466 S.E.2d 635, 637 (1995). Here, Plaintiff's injuries arose from the medical treatment rendered by Jackson, who was permitted by Family Health Centers to perform medical treatments on its behalf. Thus, Plaintiff's claim arguably sounds in medical malpractice under Georgia law, which is another reason why it is covered under Section 233(a).

Because the Court finds that Plaintiff's claim for negligent hiring and retention is a "related function" under Section 233(a), this provision is not a proper basis for dismissing Count 1.

## C. Intentional Tort Exception to the FTCA

 Alternatively, Defendant argues that Plaintiff's negligent hiring and retention claim is barred by the intentional tort exception to the FTCA. 28 U.S.C. § 2680(h).[11] (Def.'s Reply at 11.) This exception provides that coverage under the FTCA "does not apply to ... [a]ny claim arising out of assault or battery...." *Id.* The Eleventh Circuit has held that a plaintiff cannot avoid the intentional tort exception "by recasting a complaint in terms of a negligent failure to prevent assault or battery because § 2680(h) bars any claim 'arising out of' assault or battery." *Reed v. United States Postal Serv.*, 288 Fed.Appx. 638, 639–40 (11th Cir. 2008) (quoting *Metz v. United States*, 788 F.2d 1528, 1533 (11th Cir. 1986)); *United States v. Shearer*, 473

---

11. The Supreme Court has referred to Section 2680(h) as the "intentional tort exception."

*See United States v. Shearer,* 473 U.S. 52, 54, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985).

U.S. 52, 54–56, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985).

Defendant fails to recognize the effect of 42 U.S.C. § 233(e). Section 233(e) states that for deemed entities receiving FTCA coverage through the FSHCAA, "the provisions of section 2680(h) of Title 28 shall not apply to assault or battery arising out of negligence in the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigations."

Although the Eleventh Circuit has not yet weighed in on the interpretation of Section 233(e), persuasive related decisions have clarified its meaning. In *Levin v. United States,* the Supreme Court evaluated a statute similar to Section 233(e) and found that it abrogated the intentional tort exception of the FTCA. The plaintiff in *Levin,* a military veteran, sued the United States under the FTCA for injuries he sustained as a result of cataract surgery performed at a U.S. Naval Hospital. 568 U.S. 503, 133 S.Ct. 1224, 1227, 185 L.Ed.2d 343 (2013). To get around the intentional tort exception of the FTCA, the plaintiff relied on 10 U.S.C. § 1089(e), which states that the exception "shall not apply to any cause of action arising out of a negligent or wrongful act or omission in the performance of medical, dental, or related health care functions." *Id.* The Court compared Section 1089(e) to Section 233(e), and though they are not identical, the Court found that Section 1089(e) "was patterned" on Section 233(e). *Id.* at 1229. Specifically, the Court held that the language "shall not apply" in Section 1089(e)—which is identical to the language in Section 233(e)— abrogated the intentional tort exception under Section 2680(h) so as to permit the plaintiff's suit against the United States for medical battery. *Id.*

The Seventh Circuit in *Lojuk v. Quandt* also discussed Section 233(e) when determining the proper interpretation of anoth-er statute, 38 U.S.C. § 4116 (which is similar to the FSHCAA but applies to the Veterans Administration). 706 F.2d 1456 (7th Cir. 1983). The court found that Section 4116, unlike Section 233, contained no exception to the intentional torts exception. *Id.* at 1463. Specifically, the court stated that Section 233(e) of the FSHCAA "expressly waives the battery provision of Section 2680(h)" of the FTCA. *Id.* at 1463.

Finally, in *Leab v. Chambersburg Hosp.,* the parents of a minor child brought an informed consent claim against a physician, arguing that the physician failed to obtain the mother's informed consent prior to administering a particular drug to her. 230 F.R.D. 395 (M.D. Penn. 2005). Under Pennsylvania law, the plaintiffs' informed consent claim sounded in battery, and the plaintiffs argued that Section 233(e) would nevertheless allow them to sue the United States. *Id.* at 396. The United States argued that the phrase "arising out of negligence" in Section 233(e) barred the plaintiffs' informed consent claim because "such a claim can never sound in negligence under Pennsylvania law." *Id.* Holding that the plaintiffs' informed consent claim was not barred by the intentional tort exception, the court found that it was "not possible to interpret [Section] 233(e) in the manner suggested by the United States." *Id.* at 397. It commented that the United States' reading of the statute would only allow the plaintiffs to recover "in a state that treats a battery as a tort of negligence," and "[w]e do not know of any jurisdiction that does this." *Id.*

■ In accordance with these decisions, the Court finds that Section 233(e) is intended to eliminate the intentional tort exception of the FTCA as it pertains to assaults and batteries arising out of negligence. Therefore, although Plaintiff's claim arises in connection with the Family Health Center's hiring of Jackson and

Jackson's commission of a battery, it may proceed pursuant to Section 233(e).

### D. Discretionary Function Exception

■ Last, Defendant argues that Plaintiff's negligent hiring and retention claim is barred by the discretionary function exception. (Def.'s Mot. Dismiss at 12.) The discretionary function exception prohibits claims under the FTCA for conduct based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a). Section 2680(a) provides:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon *the exercise or performance or the failure to exercise or perform a discretionary function or duty* on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (emphasis added).

■ The Court applies a two-prong test to determine if the discretionary function exception applies to the conduct in question. *See U.S. Aviation Underwriters, Inc. v. United States*, 562 F.3d 1297, 1299 (11th Cir. 2009); *see also United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). First, the Court determines if the conduct "involves an element of judgment or choice." *Gaubert*, 499 U.S. at 322, 111 S.Ct. 1267. "[T]he first prong of the exception is satisfied unless 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *OSI, Inc. v. United States*, 285 F.3d 947, 952 (11th Cir. 2002) (quoting *Berkovitz ex rel. Berkovitz v.*

*United States*, 486 U.S. 531, 534, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). The second prong demonstrates that "the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323, 111 S.Ct. 1267. In this prong, the Court "must determine whether the judgment is the kind that the discretionary function exception was designed to shield." *Swafford v. United States*, 839 F.3d 1365, 1370 (11th Cir. 2016) (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954). "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325, 111 S.Ct. 1267.

Defendant argues that Count 1 is precluded by the discretionary function exception because Plaintiff failed to show "any statute, regulation, or policy statement that mandated the manner in which Family Health Centers was required to undertake reference checks or make hiring decisions." (Def.'s Mot. Dismiss at 8.) Second, Defendant argues that hiring and retention of employees "is grounded in discretion and considerations of public policy." (*Id.* at 12.) Defendant cites a variety of cases in support of its argument that retention and hiring are consistently grounded in public policy. *See, e.g., Lussier v. Dugger*, 904 F.2d 661, 672 (11th Cir. 1990); *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000); *LeRose v. United States*, 285 Fed.Appx. 93, 97 (4th Cir. 2008).

Although Plaintiff concedes that the discretionary function exception may "generally" apply to employment decisions, Plaintiff argues that the discretionary function exception is inapplicable here because it does not apply to situations in which the Government fails to act after notice of illegal behavior. (Pl.'s Resp. at 9-10.) (quot-

ing *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995)). Plaintiff specifically cites to *Brons v. United States* in support of his argument that the discretionary function is inapplicable to Defendant's alleged conduct in question. No. 1:14-cv-00864-WSD, 2015 WL 630433 (N.D. Ga. Feb. 12, 2015) (Duffey, J.).

The facts in *Brons* are nearly identical to those that Plaintiff alleges, in part because *Brons* involves claims arising out of Jackson's sexual assault of another patient. *Id.* at *1. In *Brons*, the plaintiff was assaulted by Jackson when that plaintiff was an inmate at the USP. *Id.* The plaintiff brought a claim for negligent hiring and retention, arguing that the United States had knowledge, or reason to know, that Jackson had sexually assaulted an inmate in the D.C. Jail before the United States hired him. *Id.* at *4. While stating that "courts have consistently held that ... employment and termination are an exercise of policy judgment and fall within the discretionary function exception," the court applied an exception to the general rule. *Id.* The court reasoned that the "failure to act after notice of illegal action does not represent a choice based on plausible policy considerations," and therefore it held that the discretionary function exception was inapplicable to the conduct in question. *Id.* (quoting *Tonelli*, 60 F.3d at 496).

Plaintiff and Defendant both cite to *Tonelli v. United States* in support of their arguments. 60 F.3d 492, 496 (8th Cir. 1995). The *Tonelli* court held that the plaintiffs' claim for negligent supervision and retention was not barred by the discretionary function exception, but that their claim for negligent hiring was barred. *Id.* at 496. The plaintiffs in that case brought suit against the United States because one or more U.S. postal workers repeatedly "peaked at and pilfered" through the Tonellis' mail. *Id.* at 493. The plaintiffs reported and com-

plained about the conduct to the postmaster before an employee was arrested. *Id.* at 494. The court held that the negligent supervision and retention claims were not barred by the discretionary function because the defendant failed to act once illegal behavior had been alleged. *Id.* at 496. ("Failure to act after notice of illegal action does not represent a choice based on plausible policy considerations."). In contrast, no allegation had been made that the post office had notice, or reason to know, that the employee had previously engaged in similar illegal behavior before hiring him. *Id.* at 494. Thus, the negligent hiring claim was properly barred by the discretionary function exception.

The Court finds the reasoning in *Brons* and *Tonelli* to be persuasive in regard to Count 1. Although Defendant is correct in asserting that hiring and retention decisions typically fall under the discretionary function exception, Defendant has not addressed its alleged failure to act after notice of illegal behavior. The Court finds that the alleged facts plausibly indicate that Defendant knew or should have known that Jackson had sexually preyed upon patients—conduct involving illegal acts—before hiring and retaining him. In particular, Plaintiff alleges that Jackson was terminated from the USP on July 11, 2012 for sexually assaulting three inmate patients, and subsequently, he began working at Family Health Centers on July 23, 2012. (Compl. ¶¶ 16-17); (Pl.'s Sur-reply, Ex. A at 15.) Jackson was also indicted in the D.C. Superior Court in the District of Columbia on July 24, 2012—over a month before he met with and assaulted Plaintiff on August 29, 2012. *United States v. Lewis Jackson*, No. 2012 CF2 012893 (D.C. Sup. Ct.). Defendant allegedly would have known of Jackson's past misconduct if it had not been negligent in performing its duties of hiring and retaining Jackson. And as a matter of law, Defendant could

not have acted with discretion—it was not a "choice"—if it knew that Jackson had been previously terminated for sexually assaulting patients before it hired or retained him. *See Tonelli*, 60 F.3d at 496. Because the Court considers Plaintiff's alleged facts to be true at this time, the Court finds that the discretionary function exception does not bar Count 1.[12] Thus Defendant cannot rely on the discretionary function exception to the FTCA.

For the reasons stated above, Count 1 is not dismissed.

### E. Count 2: Defendant's Negligent Failure to Report to Appropriate Licensing Authorities

 Plaintiff alleges that USP negligently failed to report Jackson's misconduct to the "state licensing authorities"—the Georgia Composite Medical Board and the NPDB.[13] Plaintiff relies on O.C.G.A. § 31-7-9(c) in support of his argument. This section provides, in relevant part:

> An oral report shall be made immediately by telephone or otherwise and shall be followed by a report in writing, if requested, to the person in charge of the medical facility or his designated delegate. The person in charge of the medical facility or his designated delegate **shall then notify the local law enforcement agency having primary ju-**

**risdiction in the area** in which the medical facility is located of the contents of the report. . . .

O.C.G.A. §. 31-7-9(c) (emphasis added).

Defendant argues that Plaintiff's reliance on O.C.G.A. § 31-7-9 is inapposite because O.C.G.A. § 31-7-9 "does not indicate that a medical facility must notify state licensing authorities, the Georgia Composite of Medical Examiners [sic] and the National Practitioner Data Bank." (Def.'s Mot. Dismiss at 14.) Defendant also argues it did notify the proper authorities because Jackson was indicted in the U.S. District Court for the Northern District of Georgia. (*Id.*)

When evaluating O.C.G.A. § 31-7-9, "the starting point is the language of the statute itself." *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1212 (11th Cir. 2010). "If the statutory text is unambiguous, the statute should be enforced as written, and no need exists for further inquiry." *See United States v. Dodge*, 597 F.3d 1347, 1352 (11th Cir. 2010) (en banc).

The Court agrees with Defendant. O.C.G.A. § 31-7-9 specifically describes a duty to "report to local law enforcement" and does not confer a duty on a medical facility or physician to make reports to the NPDB or the Georgia Composite Medical Board. Because Defendant did report to local law enforcement—as evidenced by

---

**12.** Plaintiff's arguments regarding "imputed knowledge" between the USP and Family Health Centers are without merit. (Pl.'s Surreply at 2.) Family Health Centers and the USP are two separate entities, and Plaintiff cannot argue that knowledge of Jackson's misconduct can be imputed from the USP to Family Health Centers simply because the United States is serving as the defendant for both entities.

**13.** In his Response, Plaintiff alleges that Defendant violated O.C.G.A. § 31-7-9(c) by failing to report Jackson's misconduct "immediately." (Pl.'s Resp. 14.) However, Plaintiff did not raise this allegation in his Complaint. The Court will not consider this allegation because the Court is limited to the allegations raised in the Complaint on a motion to dismiss. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 999 (11th Cir. 2009); *Mitchell v. Thompson*, 564 Fed.Appx. 452, 458 (11th Cir. 2014).

Jackson's indictment—Count 2 is therefore properly dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss [Doc. 6] is **GRANTED IN PART** and **DENIED IN PART**. Count 1 of Plaintiff's Complaint is **NOT DISMISSED**, and Count 2 is **DISMISSED**.

**IT IS SO ORDERED** this 9th day of March, 2017.

